## S02A1141. COLBERT v. THE STATE.
(570 SE2d 321)

BENHAM, Justice.

This appeal is from Melissa Evonne Colbert's conviction for felony murder and arson.[1] After a fire was extinguished at his home, Clifford Murphy was found dead of multiple stab wounds. Murphy was known to sell liquor from his home and, for a fee, to permit people to smoke crack cocaine there. His empty wallet was found on the floor. Two knives normally found in his pockets were missing and a scarf was knotted around one wrist. The fire was started using a petroleum distillant poured onto Murphy. Shortly after this incident, witnesses Benny Lofton and Brenda Miller observed Colbert burning

---

[1] The crimes were committed on November 22, 1998, and Colbert was arrested on December 8 of that year. She was indicted on February 18, 1999, for malice murder, felony murder (aggravated assault), and first degree arson. Following a trial conducted November 15-18, 1999, Colbert was acquitted of malice murder and convicted of felony murder and arson. The trial court sentenced her to life imprisonment for felony murder and a consecutive 20-year sentence for arson. Colbert's motion for new trial, filed November 19, 1999, was denied on February 28, 2002; her notice of appeal was filed March 21, 2002; and the appeal was docketed in this Court on April 17, 2002, and submitted for decision on the briefs.

her bloody clothes and throwing a knife into the fire. She appeared to be high and had crack cocaine and a roll of money in her possession. After Colbert was arrested, she gave three statements. In the first, she stated that she was not present at the victim's house on the date of his death, and that she burned her clothes the day before the killing because they were dirty. In her second statement, Colbert said she went to the victim's house with Benny Lofton to buy liquor on the day Murphy died; that Murphy and Benny Lofton fought and her scarf came off as she tried to break up the fight; and that Benny Lofton stabbed Murphy, tied his hands with the scarf, and set him on fire. Her third statement was that she went to Murphy's home with Benny Lofton's nephew Jimmy, that Jimmy stabbed Murphy, that she helped tie Murphy after the stabbing, and that Jimmy told her to blame his uncle. Jimmy Lofton's denial of involvement was supported by the testimony of his roommate that he was at home at the time of the killing. The State put on similar transaction evidence which included a certified copy of Colbert's 1984 conviction for voluntary manslaughter, and testimony regarding two statements Colbert made to police officers before pleading guilty to manslaughter. In her first 1984 statement, Colbert testified that she and friends planned to steal drugs from the victim, but that she did not go into the house or have any involvement in the killing. In her second statement, she said that she went to the victim's house to trade cocaine for marijuana, but the victim took her drugs and sexually assaulted her; she left, obtained a gun, and returned for her drugs; and when the victim grabbed her, she shot him.

1. The evidence adduced at trial was sufficient to authorize a rational trier of fact to find Colbert guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In her only enumeration of error, Colbert contends that the trial court erred in permitting her statements to the police from 1984 to be introduced as part of the evidence of a similar transaction. To the extent that enumeration of error encompasses the trial court's decision to permit the introduction of similar transaction evidence, we conclude no error was committed. The State made the three showings required by *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991): that the similar transaction evidence was being offered for a proper purpose, demonstrating Colbert's course of conduct; Colbert's identity as perpetrator of the prior offense was shown by her guilty plea; and there were sufficient similarities between the crimes in that both crimes involved drug transactions and multiple wounds to the victim. Because the trial court's finding of similarity was not clearly erroneous, it must be upheld. *Smith v. State*, 273 Ga. 356, 357 (2) (541 SE2d 362) (2001).

But the gist of Colbert's argument is that the State cannot prove course of conduct by means of statements made after the crime was committed, but only by a showing of conduct before and during the commission of the crime. Contrary to Colbert's argument on appeal, however, *Williams v. State*, supra, does not limit the State, when it seeks to show a common course of conduct or scheme, to a defendant's statements and acts leading up to the commission of the crimes. Indeed, Georgia courts have allowed statements made at or after arrest to be used to show the similarity between prior offenses and the offense on trial. See, e.g., *Felder v. State*, 273 Ga. 844, 845 (3) (545 SE2d 918) (2001) (defendant claimed in both cases that the victim was the aggressor); *Guild v. State*, 236 Ga. App. 444, 445 (2) (512 SE2d 343) (1999) (defendant denied in both cases possession of drugs found in his proximity).

Colbert's effort to limit the evidence showing similarity of offenses to events before and during the commission of the criminal act ignores the reality that there are circumstances in which conduct following the commission of a criminal act is relevant. One example is the long standing rule that evidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction as a party to the crime if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act. *Hixon v. State*, 251 Ga. App. 27 (1) (553 SE2d 333) (2001). Another example arises from the law of conspiracy, specifically from the question of which statements of a conspirator may be admitted against another conspirator. OCGA § 24-3-5 makes the statements of conspirators "during the pendency of the criminal project" admissible against other conspirators. Case law has clarified that the pendency of the criminal project includes the accomplishment of the crime itself plus concealment of the crime or the identity of the perpetrators. *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976).

Although neither of those examples applies directly to the present case, they make clear the general principles that a "criminal project" does not terminate while there is still an effort to conceal the identity of the perpetrator, and that evidence of a defendant's conduct after commission of a crime can be relevant. Applying those general principles to this case, we conclude that Colbert's statements to the police concerning the prior offense were part of that offense and her statements to the police regarding the present case were likewise part of the offenses charged here, and the statements could be used to show similarity between the two crimes. Accordingly, we hold that the trial court did not err in permitting the use of the statements.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., who concurs in the judgment and in Division 1 of the opinion.*

DECIDED SEPTEMBER 30, 2002.

*Brimberry, Kaplan & Brimberry, Mark D. Brimberry, A. Lee Hayes*, for appellant.

*Kenneth B. Hodges III*, District Attorney, *Kenneth A. Dasher*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Wylencia H. Monroe*, Assistant Attorney General, for appellee.