A04A2255. MURPHY v. THE STATE.
(612 SE2d 104)

ADAMS, Judge.

Jimmy Lee Murphy was charged with one count of violating the Georgia Controlled Substances Act, OCGA § 16-13-30, by selling methamphetamine to an undercover police officer and his confidential informant (CI). He was convicted by a Cherokee County jury and appeals following the trial court's denial of his motion for new trial. We affirm.

Viewed in the light most favorable to support the verdict, the evidence shows that on the night of October 28, 2002, Michael Greer, and other agents of the Cherokee County Multi-Agency Narcotics Squad were working with the CI in an undercover drug operation. In cooperation with police, the CI recorded telephone conversations she had with Murphy and his wife, Donna, in an attempt to purchase drugs from them.

In her first call that night, the CI spoke with Donna Murphy. The informant asked to speak to Murphy, but his wife said that he was in the shower. During this short conversation, the CI asked if she could get "something" from them, but Donna Murphy told her that she would have to call the CI back. When Donna Murphy did not return the call, the CI called the Murphys back. This time, Murphy answered the phone.

As in the prior conversation, the informant discussed other topics before asking Murphy if he could do "a favor" for her friend. In that connection, she asked if Murphy could either come over or meet her, and he replied, "Yeah." The CI said that she was in a hurry because she needed to pick up her child from her mother's house. She told Murphy that she wanted to meet him before she picked up her child, saying "that way, you know, she don't have to see, you know," and Murphy replied, "Yeah." The CI told Murphy that she needed to go get her friend's money, and they later discussed meeting somewhere. The CI explained that she did not want any "traffic here," presumably at her home, and he replied, "I know. I don't want to be over there." Near the end of the conversation, the CI told Murphy that "she's talking about . . . she's got a $100," and she asked Murphy, "Can you do that?" He replied in the affirmative. The CI then told him to get "just whatever she'll like," and Murphy replied, "Fine."

Sometime later in the evening, the CI called the Murphys back to see where they were. She told them that she would be waiting for them at a gas station near her house. Murphy then asked the CI, "100, right?" and clarified that he meant $100. She replied, "Yeah, that's all he brought," but the CI said that she might be able to get more money the next day. The state played an audio recording of these telephone conversations for the jury at trial.

Greer and the CI parked the agent's car at the gas station and waited for the Murphys to arrive. Other agents were parked nearby to observe and videotape the anticipated drug transaction. Sometime after 10:00 p.m., the Murphys arrived at the gas station. Murphy was driving and pulled his truck beside one of the gas pumps. After a few minutes passed, the CI went over to the truck at Greer's direction and spoke with Murphy and his wife. The CI returned to Greer's car and waited. A short time later, Donna Murphy came over to the car and had a brief conversation with the CI and Greer. She then went back to the truck. When Donna Murphy returned to Greer's car, she dropped a package into the CI's lap. Police later determined that the package contained methamphetamine.

After a brief conversation, Donna Murphy returned to the truck and Greer gave the CI the money to pay for the drugs. The CI walked over to the Murphys' truck, placed the money in the driver's seat and returned to Greer's car. Greer then called out to Donna Murphy, and she returned to his car. He asked her about the quality of the purchase and asked if he could get more in the future. She told him to call her. The state played both a video and an audio recording of the transaction for the jury at trial.

1. Murphy first contends that the trial court erred in allowing the state to present similar transaction evidence because the evidence did not establish either that Murphy committed the other crime or that there was a sufficient connection between the prior crime and the crime in this case.

In order to introduce evidence of similar transactions, the state must affirmatively show, as mandated by *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), that (1) the evidence is being introduced for an appropriate purpose, such as proof of the defendant's identity, intent, course of conduct, and bent of mind; (2) the accused committed the independent offense or act; and (3) a sufficient connection or similarity exists between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Branch v. State*, 255 Ga. App. 596, 597 (565 SE2d 910) (2002).

As evidence of the similar transaction, the state introduced a certified copy of Murphy's 2002 conviction for selling methamphetamine in Murray County and presented the testimony of Sam West,

an investigator with the Murray County Sheriff's Office. West testified that he was working with a cooperating witness on July 9, 2001, to set up an undercover drug buy. West searched the witness's car to confirm that it contained no drugs, placed a recording device on his person and gave him $200 in county funds to purchase drugs. He then followed the witness to the location of the proposed drug buy in Chatsworth. He watched the witness go into the house and come back out. He then followed the witness's car back to the police department, where the witness turned over a beige material, which the officer transferred to the Georgia Bureau of Investigation (GBI) crime lab for analysis. As a result of that undercover operation, Murphy was charged with a violation of the Georgia Controlled Substances Act for selling methamphetamine. He subsequently pled guilty to that charge.

Murphy contends that the admission of this evidence was error because West did not witness what occurred in the house and thus could not testify that Murphy was involved in any drug transaction. But Murphy's identity as the perpetrator of the prior drug offense was shown by his guilty plea. *Colbert v. State*, 275 Ga. 525, 526 (570 SE2d 321) (2002). And the state established that the two crimes were sufficiently connected as both involved undercover purchases of methamphetamine. See *Branch v. State*, 255 Ga. App. at 597. We note that the separate crime need not be identical to the charged crime to be admissible. *Williams v. State*, 264 Ga. App. 115, 117 (2) (589 SE2d 676) (2003).

> Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct.

(Citation omitted.) *Marion v. State*, 268 Ga. App. 699, 701 (3) (603 SE2d 321) (2004). Accordingly, we find no error in the trial court's admission of this evidence.

2. Murphy also argues that the trial court erred in failing to grant his motion for directed verdict because there was insufficient evidence to show his involvement in the crime. The standard of review for considering the denial of a motion for a directed verdict is the same as that for reviewing the sufficiency of the evidence to support a conviction. Thus, we view the evidence in the light most favorable to the verdict, and Murphy no longer enjoys the presumption of innocence. *Davenport v. State*, 255 Ga. App. 593 (1) (565 SE2d 900) (2002); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Moreover, unless the verdict is unsupportable as a matter of law, it is

for the jury to determine whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt. *Wilson v. State*, 256 Ga. App. 741, 742 (1) (569 SE2d 640) (2002).

The state presented the recorded conversations between Murphy and the CI to set up the drug buy. And the evidence showed that Murphy drove to the designated meeting place and that the CI dropped the money for the drugs in his seat. Although Murphy did not participate in the actual drug transaction, we find that there was sufficient evidence presented to show that he was a party to the crime and thus to authorize his conviction. See *Jackson v. State*, 259 Ga. App. 108, 110 (576 SE2d 85) (2003); *Curry v. State*, 238 Ga. App. 511, 522 (4) (519 SE2d 269) (1999); *Height v. State*, 221 Ga. App. 647, 648 (1) (472 SE2d 485) (1996). "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citation, punctuation and footnote omitted.) *Wilson v. State*, 256 Ga. App. at 742 (1).

Therefore, the trial court did not err in refusing to direct a verdict in Murphy's favor.

3. Murphy also asserts that the trial court erred in denying his motion for directed verdict on the ground that police contaminated the drug sample during a field test. Officer Matt Baldwin of the Cherokee County Multi-Agency Narcotics Squad testified that before wrapping the package dropped by Donna Murphy to send it to the crime lab, he performed a field test on the evidence by inserting a knife into the package. He obtained the knife from another officer and did not know where it had been and did not sanitize it before using it in the field test.

The GBI forensic chemist who performed the analysis of the evidence in this case testified that she would not be particularly concerned to learn that one of the officers had used a knife to open up the plastic bag containing the evidence. She said that although the possibility existed that a sample might be tainted, she testified that she had a good size sample upon which to perform her analysis and received a "very strong amphetamine response" to the tests.

We note that Murphy did not object at trial to the forensic chemist's testimony identifying the substance in the package as methamphetamine, but only questioned her during cross-examination about the possibility of contamination. Thus, no issue was raised regarding the admissibility of the evidence. The only remaining issue goes to the weight to be accorded the evidence, which is solely in the province of the jury, and we find no error in the trial court's denial of

Murphy's motion for directed verdict on this ground. See generally *Walton v. State*, 269 Ga. App. 812, 813 (1) (605 SE2d 622) (2004).

4. Murphy further contends that the trial court erred in replaying the audio tape of the phone calls at the jury's request. But it is well settled that a trial court has discretion to replay evidence that the jury asks to hear. *Davis v. State*, 246 Ga. App. 877, 878 (1) (542 SE2d 626) (2000); *Newman v. State*, 233 Ga. App. 794, 796-797 (5) (504 SE2d 476) (1998). We find that the trial court did not abuse its discretion in allowing the jury to rehear the tape.

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 18, 2005.

*Flint & Connolly, John F. Connolly*, for appellant.

*Garry T. Moss, District Attorney, Scott T. Poole, Assistant District Attorney*, for appellee.