## A05A1177. ALLEN v. THE STATE.
(622 SE2d 54)

MIKELL, Judge.

Bobby Harold Allen was charged with three counts of child molestation. The first two counts accused Allen of touching his young son's penis and buttocks. Count 3 accused Allen of forcing the child to rub Allen's penis with his hands.[1] A jury convicted Allen on the first two counts, and the trial court granted a directed verdict of acquittal on the third. Allen was given two concurrent fifteen-year sentences, with eight years to be served in confinement and the balance on probation. He filed a motion for a new trial alleging ineffective assistance of counsel, juror misconduct, and insufficiency of the evidence. The trial court denied the motion, and this appeal followed. Allen argues that the court erred in denying his motions for a new trial and for a directed verdict on Counts 1 and 2 and by giving an inaccurate jury instruction on criminal intent. We affirm.

Viewed in the light most favorable to the verdict, the record shows that Allen sexually abused his son, B. O., between fifteen and twenty times during the years B. O. was five or six years old until he was eight or nine. B. O., who was 13 years old at the time of trial, described his father's pattern of touching him inappropriately during those years. He testified about a particular incident that occurred when he was seven or eight years old, when he and his father were living with Allen's fiancée, Debbie O'Neal. According to B. O., his father entered the bathroom where B. O. had just exited the shower and touched the child's penis. B. O. identified a drawing that he had made during a counseling session when he was approximately ten years old,[2] depicting himself stabbing Allen with a knife. B. O. explained that he was mad at his father for "touching [him] sexually." B. O. testified that his father said he would kill him if the boy told anyone about the abuse. Stan Lepard, a therapist, testified that he began treating B. O. in October 2001, and that B. O. first told him

---

[1] The time period specified within the indictment is on or between January 1, 1996, and July 16, 1999, "the exact date being unknown to the Grand Jurors." Testimony revealed that the child was between the ages of five and nine years when the incidents took place.

[2] B. O. began seeing a counselor after his brother's death.

about the sexual abuse in January 2002. According to Lepard, B. O. told him that "his dad tried to have sex with him" while they were in a bed together and that his father had abused him approximately 15 times. Lepard further testified that B. O. indicated his genital area when asked where his father had touched him. B. O. first reported the abuse to his mother, Frankie Dulaney, in December 2001, and she immediately contacted the authorities.

1. Allen assigns error to the trial court's denial of his motion for a directed verdict on Counts 1 and 2 of the indictment, which charged him with child molestation by touching B. O.'s penis and buttocks with his hands "on or between [January 1, 1996], and [July 16, 1999], the exact date being unknown to the Grand Jurors."

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

(Citation omitted.) *King v. State*, 268 Ga. App. 811, 812 (1) (603 SE2d 88) (2004). Applying this standard to the evidence summarized above, we find sufficient evidence to support the judgment.

We note that Allen failed to indicate which portions of the argument section of his appellate brief apply to each enumerated error, in violation of Court of Appeals Rule 25 (c) (1). It appears that his only argument in support of this asserted error is that the evidence did not establish that the abuse took place within the statute of limitation for the offense charged and within the dates set forth in the indictment. This argument is without merit.

Contrary to Allen's reliance on a four-year statute of limitation, the law is clear that a seven-year statute of limitation applies to the offense of child molestation. OCGA §§ 17-3-1 (c); 17-3-2.1 (a) (5); 16-6-4 (a). See also *Porter v. State*, 270 Ga. App. 860, 861 (1) (608 SE2d 315) (2004). The time period provided in the indictment, January 1, 1996, to July 16, 1999, falls well within the required seven years. In fact, B. O. first reported the crime in December 2001, and Allen was indicted in 2003. See *Porter*, supra (seven-year statute of limitation began to run when the victim reported the molestation). The evidence of B. O.'s age and the time period in which the abuse took place corresponds to the dates in the indictment. Furthermore, even if the evidence does not establish precise dates of when the abuse took

place, "[w]here the date alleged in the indictment is not a material element of the offense, the State may prove the offense as of any date within the statute of limitation." (Citations and footnote omitted.) *Miller v. State*, 226 Ga. App. 509, 510 (1) (486 SE2d 911) (1997). The evidence sufficiently placed the dates of the charged offenses within the seven-year limitation period. See id.

2. Allen argues that the trial court erred in denying his motion for a new trial based on alleged misconduct by a juror during the voir dire phase of the trial. The record reveals that Juror 44 did not respond to a general question by the trial judge as to whether any of the prospective jurors had "a close family member or a friend" who had been accused of or a victim of a crime similar to that with which Allen was charged. It was later discovered that Juror 44's nephew had been incarcerated for child molestation approximately six years prior to the trial. At the hearing on Allen's motion for a new trial, the juror explained that she did not recall hearing the question; that she did not consider her nephew to be a close relative; and that she was not sure that she would have responded affirmatively had she heard the question. She further testified that her nephew's conviction did not enter her mind during Allen's trial and that it did not prejudice her in any way. According to Allen's trial counsel, he learned that a juror might have neglected to respond to the court's question during the trial. He informed the state and the court but did not move to exclude the juror or to obtain any ruling from the trial court on the issue.

The law is clear that "trial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience, and a trial court may only be reversed upon a finding of 'manifest abuse' of that discretion." (Citations and punctuation omitted.) *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). Accord *Gibson v. State*, 267 Ga. App. 473, 478 (4) (600 SE2d 417) (2004); *Kier v. State*, 263 Ga. App. 347, 348 (1) (587 SE2d 841) (2003). It is also well settled that "[t]he law presumes that potential jurors are impartial." (Footnote omitted.) *Cohen v. Baxter*, 267 Ga. 422, 424 (2) (479 SE2d 746) (1997). Accord *Kim*, supra at 179; *Gibson*, supra. In this case, Allen did not move to exclude Juror 44 at any time during the trial, and, even if he had, we cannot say that it would have been a manifest abuse of discretion for the trial court to deny such a motion. The record before us does not demonstrate bias or a lack of impartiality on the part of Juror 44. Accordingly, the trial court did not err in denying Allen's motion for a new trial on this ground.[3]

---

[3] Allen does not contend that the trial court failed to ask the voir dire questions required by OCGA § 15-12-164 (a).

3. In his third enumerated error, Allen contends that he was denied the effective assistance of counsel because his trial counsel failed to object to the court's ruling that Allen's silence when asked whether he slept in the same bed with his son constituted an admission. Allen's contention is contrary to the record and is without merit.

Lieutenant Jeannie Griggers of the Meriwether County Sheriff's Department testified at the *Jackson-Denno* hearing in this case that she interviewed Allen after informing him of his *Miranda* rights, which he waived. According to Griggers, Allen did not deny sleeping in the same bed with his son, and, in fact, "[h]e said that he slept with his son." Griggers typed up a summary of the interview because Allen refused to give a signed statement, and the interview was not recorded. The trial court ruled that Allen's "admission . . . that he at some time slept in the bed with his son, was freely and voluntarily given, and that the defendant knowingly and intelligently waived his *Miranda* rights." Allen does not challenge the court's ruling on appeal. Griggers testified at trial that Allen "did admit that [B. O.] did sleep in the bed with him, but he had not fondled him." A bench conference took place immediately after this statement by the officer, but it was not transcribed.

To prove ineffective assistance of counsel, the defendant must show: (1) "that trial counsel's performance fell below a reasonable standard of conduct[;] and [(2)] that there was a reasonable probability that the outcome of the case would have been different but for the deficient performance of counsel." *Milner v. State*, 271 Ga. 578, 579 (2) (522 SE2d 654) (1999), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Allen has failed to satisfy either prong. In fact, contrary to his contention, Grigger's testimony was not that Allen remained silent, but that he "said that he slept with his son." The record reveals that Allen's trial counsel mounted a vigorous defense, including a successful directed verdict motion on Count 3. We find no merit to this asserted error.

4. Finally, Allen assigns error to the following portion of the trial court's jury charge on criminal intent:

One of the charges [is] going to deal with intent. In every criminal case[,] it must be shown by the State that there was intent to commit the act that the person is charged with. But that doesn't mean someone had to write it down somewhere and say how they intended to do something or that he told somebody he intended to do something. . . . If I was riding down the road and somebody cut me off[,] and I decided to have road rage[,] and they stopped at a red light[,] and I jumped out of my car with a pistol and shot them, I didn't

have to tell anybody I intended to do that[,] nor does the State have to show anything like that. It's obvious I intended to do it because of what I did. So intent can be inferred from the facts that happen under the circumstances.

Significantly, Allen failed to object to the jury charge or to reserve his objections. "Failure to object to a jury charge in a criminal case constitutes a waiver except where, under OCGA § 5-5-24 (c), there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made or not." (Citations omitted.) *Medina v. State*, 234 Ga. App. 13, 15 (2) (505 SE2d 558) (1998). We held in *Medina* that

[i]n order to satisfy this standard, appellant must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. Nothing is presented for consideration on appeal unless a gross miscarriage of justice attributable to the jury charge is about to result.

(Citations and punctuation omitted.) Id. Here, we find no substantial error in the court's jury charge which would require our review under OCGA § 5-5-24 (c). The court's instruction did not improperly shift the burden of proof as Allen suggests, and we do not find that the instruction deprived him of a fair trial. Accordingly, this error presents nothing for this Court to review.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 13, 2005.

*Thomas R. Morgan, Jr.*, for appellant.
*Peter J. Skandalakis, District Attorney, Robert N. Peterkin, Stephen M. Gray, Assistant District Attorneys*, for appellee.