## A06A0614. WILLIAMS v. THE STATE.
(630 SE2d 601)

BARNES, Judge.

A jury found Edward Williams guilty of trafficking in methamphetamine, possession with the intent to distribute methamphetamine, possession of carisoprodol[1] (a controlled substance under

---

[1] Carisoprodol is a muscle relaxant that can be used to counter the stimulant effect of methamphetamine.

OCGA § 16-13-28 (a) (2.25)), and possession of a firearm during the commission of a crime. Williams appeals, contending that insufficient evidence supports his convictions and that the trial court erred by allowing the State to present evidence of a similar transaction. For the reasons set forth below, we affirm all of Williams' convictions except the possession of a firearm during the commission of a crime, which we reverse because insufficient evidence supports it.[2]

On appeal, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995). Viewed in this light, the record shows that a confidential informant arranged a controlled buy of methamphetamine from Williams. The buy was recorded on audiotape and the informant identified Williams' voice on the tape. The informant went to Williams' house, walked to the end of the driveway near the entrance of a stand-alone garage, and yelled for Williams. When Williams appeared in the driveway (from a location that cannot be determined from the trial testimony), he acted as if he were high on methamphetamine. He seemed to see something on the driveway that was not there as if he were hallucinating, and "was extremely wired up and just talking a lot of nonsense." The informant made arrangements to purchase methamphetamine and Williams told him the drugs he made were wonderful and strong. After the informant gave Williams the money, they walked to a house next door to obtain the drugs, which tested positive for methamphetamine and weighed a little over one gram. After obtaining the methamphetamine, the informant left and turned it over to the police, who had visually monitored the buy.

The informant also testified that he talked with Williams about how to make methamphetamine, that Williams instructed him about the ingredients he would need, and that Williams offered to show him how to make it. Finally, the informant testified that the methamphetamine he purchased from Williams was unique because it was a "really nasty looking" dark green. It was the first time the informant had ever seen dark green methamphetamine; its more usual colors are white, pink, or clear.

When the police executed a search warrant for Williams' residence, they discovered materials used to make methamphetamine and a dark green substance containing more than 28 grams of

---

[2] Williams was tried jointly with Tommy Davis, and we affirmed his trafficking in methamphetamine conviction in an unpublished opinion. *Davis v. State* (Case No. A05A2227, decided January 25, 2006).

methamphetamine in the garage. They also found carisoprodol. Two police officers testified that a gun was also found in the garage, but neither of these officers personally observed the gun in this location. When the police first entered the garage, they found Williams in there, five to ten feet from the door, walking toward them with a knife in his hand. When the police told Williams they were looking for a meth lab, Williams claimed that people who had just left his residence "had been in his garage cooking meth."

The similar transaction showed that Williams entered a residence that had just been searched by police pursuant to a warrant after all marked police cars, but *not* all unmarked police cars, had left. When a police officer who had remained searched Williams, he discovered several plastic bags containing several grams of methamphetamine. At the time of his arrest, Williams acknowledged that the methamphetamine was his and he subsequently pled guilty to possession of methamphetamine.

1. We find this evidence sufficient to support Williams' drug convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Williams' place of residence, his sale to the informant of similar green methamphetamine, his location at the time of his arrest, and his admissions to the informant and the police provide an adequate link between Williams and the drugs found in the garage.

2. Because insufficient evidence supports Williams' conviction for possession of a firearm during the commission of a crime, we must reverse this conviction. OCGA § 16-11-106 provides that it is unlawful for a person to "have on or within arm's reach of his or her person a firearm" during the commission of an enumerated felony, which includes possession, selling, and trafficking of illegal drugs.[3] In this case, the only evidence of the gun's location was the hearsay testimony of the two police officers, which "is without probative value to establish any fact," even in the absence of objection. *Collins v. State*, 146 Ga. App. 857, 860 (1) (b) (247 SE2d 602) (1978). See also *Livingston v. State*, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997). Thus, the State failed to present competent evidence showing that a firearm was "on or within arm's reach of [Williams'] person." OCGA § 16-11-106. See also *Carswell v. State*, 251 Ga. App. 733, 734-735 (1) (b) (555 SE2d 124) (2001) (statute requires that "weapon be either on or within arm's reach of the person charged with possessing a firearm during the commission of [a] felony").

---

[3] While this Code provision also criminalizes possession of a knife, the indictment charged Williams with possessing "a Rexio .38 caliber handgun," not with possessing the knife.

3. In his remaining enumeration of error, Williams contends that the trial court erroneously admitted the similar transaction evidence. We review a trial court's decision to admit such evidence for abuse of discretion. *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998). To qualify for admission as a similar transaction, the State must show that (1) it is introducing the evidence for an appropriate purpose, (2) sufficient evidence establishes that the accused committed the independent offense, and (3) sufficient similarity exists between the independent offense and the crime charged, so that "proof of the former tends to prove the latter." *McKibbons v. State*, 226 Ga. App. 452, 454-455 (3) (486 SE2d 679) (1997). "[T]he separate crime need not be identical to the charged crime to be admissible." *Murphy v. State*, 272 Ga. App. 287, 289 (1) (612 SE2d 104) (2005). As the record shows the presence of all factors required to authorize admission of the similar transaction evidence in question, we find no error by the trial court.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Bernes, J., concur.*

DECIDED APRIL 21, 2006.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellant.
*Kermit N. McManus, District Attorney, Forest L. Miles, Assistant District Attorney*, for appellee.