A06A1620. BRIGMAN v. THE STATE.
(639 SE2d 359)

ADAMS, Judge.

Jonathan B. Brigman appeals following his conviction on two counts of aggravated assault, one count of false imprisonment and two counts of simple battery. We affirm.

---

[2] See OCGA §§ 16-11-37 (c); 16-13-30 (j); 16-1-3 (5).

On appeal from his convictions, Brigman no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the verdict. *Dudley v. State*, 264 Ga. App. 845 (1) (592 SE2d 489) (2003). Moreover, this Court does not weigh the evidence or resolve issues of witness credibility, but only determines if the evidence was sufficient to find Brigman guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in that light, the record shows that Brigman and Michelle Long were married in September 2001. On the evening of November 17, 2003, after arguing over the phone about financial matters, the couple decided to separate. Long was at home, and she told Brigman not to return that night but to come the next day to retrieve his things, while she was at work. Sometime between 11:00 and 11:30 p.m. that night, however, Brigman arrived and entered the room where Long was working. He said that he was there to return $20 of the $500 he had taken from her a few weeks earlier. Long was upset that he had come home against her wishes and had only returned a small portion of the money he took. An argument ensued.

As the argument escalated, Brigman pulled Long out of her chair by her hair and pinned her down. Long pleaded for Brigman to stop and to leave, but he refused. When she tried to leave the room, Brigman blocked the door and told her she was not leaving because she was his hostage. Whenever Long attempted to stand up, Brigman pulled her back down by her hair or pushed her down, telling her she was not leaving. Brigman continued to berate Long, using profanity, telling her he hated her and calling her names.

Sometime in the early morning hours, Long, hoping to get to a telephone, told Brigman that she needed to use the restroom. At some point Brigman had collected her telephones to prevent her from calling 911. Unbeknownst to him, however, Long had hidden her cell phone in her clothing. Brigman allowed her to leave the room, but made her leave the bathroom door open. She then asked for a drink of water, hoping for an opportunity to call a friend to come over and calm Brigman down. But Brigman caught her when she tried to place the call. Thinking Long was trying to call 911, he became agitated, pulled her back into the room and threw her down on the sofa. He grabbed a utility knife, held her down by her hair and held the knife to her throat, saying that if the police arrived he would cut her throat.

At some point as Long pleaded with him not to hurt her, Brigman calmed down, pulled the knife away and began to pace back and forth talking to himself. Throughout the incident, Brigman would become agitated and then calm down again. Long testified that during the night Brigman used methamphetamine that he had brought with

him. She felt the drug made him more aggressive, saying he was "jittery and shaky and kind of freaking out."

During one of his agitated periods, Brigman grabbed a hammer, moved toward Long and told her he would "bash" her head in. As Long put her head down onto the sofa and threw her hands up to protect herself, Brigman suddenly stopped and put the hammer down, saying, "no, no, no." He paced for a minute, then came at her with his fists, hitting her a number of times as she cowered on the sofa. Brigman backed off and resumed pacing back and forth talking to himself. When she believed he had calmed down, Long again tried to get up and leave the room. Brigman took his fingers and forcibly poked her abdomen, right below her chest, leaving marks, pushing her down and knocking the breath out of her. At around 5:00 or 5:30 in the morning, however, Brigman calmed down and began apologizing. He allowed Long to leave the room, get ready for work and get her son off to school.

Later that day, Long reported the incident to a police officer at the school where she worked. The officer observed red marks on her stomach where she said Brigman had pushed her.

At trial, the State presented evidence of three prior incidents involving Brigman and his domestic partners. In the first incident, Renee Simmons, Brigman's ex-wife, testified that she was married to him for five months in 1997. She stated that on September 1 of that year, Brigman became angry with her when she and her children returned late from a fast food restaurant. Later that night, after she put the children to bed, she found Brigman in the bedroom on the phone and asked him who he was talking to. He jumped off the bed with the phone in his hands, grabbed her by the throat, threw her against the closet doors, and began cursing her. He then forced her to sit in a corner of the room. Brigman was wearing heavy boots, and when she tried to get up, he would lash out at her with his booted foot. She eventually convinced him that she heard someone knocking at a downstairs door. When they got downstairs to open the door, she said Brigman suddenly snapped out of his rage and began crying and apologizing.

Stacy Barnett, Brigman's former girlfriend, testified that on June 3, 1999, she and Brigman were arguing, possibly over financial issues, when Brigman became angry and grabbed her by the throat, choking her. He threatened to kill her and her son if she told anybody about the incident. Barnett reported the incident to police, but did not pursue the charges. Then on July 11, 1999, Barnett told Brigman that she wanted to end their relationship and asked him to leave. Brigman refused, and Barnett called his mother to come get him. Brigman grabbed the phone from Barnett, slammed it against her head, and began kicking and hitting her repeatedly while she pled for him to

stop. When she tried to run out the door, he grabbed her by her hair and punched her in the chest. He threatened to kill her with a bat and swung it at her, when, "all of sudden," he stopped. Afterward, Brigman kept her in a bedroom for three days, away from her son and her friends, so no one could see her injuries. She was released only when her sister called the police to investigate. Brigman pled guilty to one count of battery and one count of false imprisonment in connection with that incident.

1. We find that this evidence was sufficient to support Brigman's convictions. "The testimony of a single witness is . . . sufficient to establish a fact." OCGA § 24-4-8. In this case, the victim's testimony, standing alone, was sufficient to establish Brigman's guilt beyond a reasonable doubt within the meaning of *Jackson v. Virginia*, but when coupled with the other evidence in the case, the proof was more than sufficient to support the convictions. *Johnson v. State*, 280 Ga. App. 341, 343 (2) (634 SE2d 134) (2006). The evidence showed two separate aggravated assaults, one with a knife and one with a hammer. See OCGA § 16-5-21 (a) (2); *Nelson v. State*, 278 Ga. App. 548, 550 (1) (629 SE2d 410) (2006); *Hayslip v. State*, 154 Ga. App. 835, 836 (3) (270 SE2d 61) (1980). The evidence also showed two separate instances of simple battery, one when Brigman pummeled Long with his fists and one when he pushed her forcibly with his fingers as she tried to stand. See OCGA § 16-5-23 (a); *Pinkston v. State*, 277 Ga. App. 432 (1) (626 SE2d 626) (2006). And the evidence surrounding the hours-long detention amply supported the jury's conviction on the charge of false imprisonment. See OCGA § 16-5-41 (a); *Shabazz v. State*, 265 Ga. App. 64 (592 SE2d 876) (2004).

2. Brigman asserts that the trial court erred in allowing the State to introduce the similar transaction evidence. He argues that the other two incidents were not sufficiently similar to the charges in this case because they did not involve the use of a weapon.

This Court will reverse a trial court's decision to admit similar transaction evidence only if the court has abused its discretion. *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998). Before admitting such evidence, the trial court must conduct a hearing to determine whether the State has shown three things:

(1) that it seeks to introduce evidence of the independent offense for an appropriate purpose and not to show the defendant's bad character; (2) that sufficient evidence establishes that the accused committed the independent offense; and (3) that a sufficient connection or similarity exists between the independent offense and the crime charged, so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

*Chatfield v. State*, 279 Ga. App. 32, 33 (1) (630 SE2d 178) (2006). See also Uniform Superior Court Rule 31.3 (B).

Moreover, "[i]n cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment." (Citation omitted.) *Maskivish v. State*, 276 Ga. App. 701, 705 (4) (624 SE2d 160) (2005). Such acts can demonstrate "the accused's attitude or mindset (i.e., his bent of mind) as to how sexual partners should be treated. Prior acts can also show an accused's course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern." (Footnote omitted.) *Talley v. State*, 269 Ga. App. 712, 714 (3) (b) (605 SE2d 108) (2004). Such evidence may be particularly important in domestic violence cases where the incidents often occur at home, in private, and may involve only the conflicting testimony of the two parties involved. See *Smith v. State*, 232 Ga. App. 290, 295 (1) (501 SE2d 523) (1998).

Here, the state sought to introduce the similar transactions to demonstrate Brigman's intent, bent of mind and course of conduct, and the trial court conducted a hearing to determine the admissibility of this evidence. Each of the prior incidents and the incident in this case involved a romantic partner and each arose after Brigman became angry, either due to an argument or due to the partner's behavior. In each incident, Brigman lashed out suddenly in anger and exerted his control over his female victim, at times when he perhaps felt he was losing control, such as when the relationship was ending or when the partner had behaved in a way that displeased him. The incident involving Simmons and the second incident involving Barnett both included a period of forced confinement, as did the incident in this case. That incident with Barnett and the incident in this case each involved the threatening use of a weapon, which stopped short of actual use. And the incidents demonstrated a pattern of angrily losing control, and then suddenly snapping out of the rage. Although not all of the incidents involved the use of a weapon, similar transactions do not have to be identical to be admissible. *Murphy v. State*, 272 Ga. App. 287, 289 (1) (612 SE2d 104) (2005).

We find no abuse of discretion in the trial court's admission of this evidence.

3. Brigman argues that the trial court erred in failing to dismiss a juror for cause.

A trial court "is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict," and so the decision whether to strike a juror for cause is left to the court's sound discretion. (Footnote omitted.) *Brown v. State*, 243 Ga. App. 632, 632-633 (1) (534 SE2d 98) (2000). And this

Court will reverse that determination only upon a manifest abuse of that discretion. *Allen v. State*, 275 Ga. App. 826, 828 (2) (622 SE2d 54) (2005). Moreover, "[b]efore a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." (Citations omitted.) *Nelson v. State*, 269 Ga. App. 103 (1) (603 SE2d 691) (2004).

Brigman takes issue with the trial court's failure to excuse Juror Labarre, whom he contends could not be fair in the case due to her domestic history. But the record shows that it was another juror, Juror Kahn, who actually stated, in response to voir dire questioning, that she could not be fair in the case due to a prior abusive relationship. That juror was later excused for cause. Juror Labarre, in contrast, originally indicated only that she had been involved in prior abusive relationships, but preferred not to discuss the matter in front of the other jurors. When she was called back for individual questioning, Labarre stated that she thought she could put aside her personal views and prior experience to decide the case based upon the evidence and the law. She explained,

> I think I can, but that is a hard question to answer. I mean, I believe that I can. I'm an engineer by degree. I'm factual. I'm analytical. I think I could. Can I tell you a hundred percent for sure? Only God knows.

In response to the trial judge's questioning, she reiterated that she thought she could decide the case on the evidence presented. At no point did she indicate that she could not be fair or impartial in deciding Brigman's case.

The trial judge was not required to strike Juror Labarre merely because she expressed some reservations about her ability to set aside her personal experiences. *Anderson v. State*, 276 Ga. 389, 390 (2) (578 SE2d 890) (2003). "Indeed, Georgia courts have held that a juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service." (Citation and punctuation omitted.) *Souder v. State*, 281 Ga. App. 339, 346 (3) (636 SE2d 68) (2006).

Accordingly, we find no manifest abuse of discretion in the trial court's refusal to strike Juror Labarre for cause.

4. Brigman also contends that the trial court erred in failing to grant him a new trial on the ground that he received ineffective assistance of counsel. He asserts that his counsel was ineffective

because he failed to investigate certain witnesses that Brigman claims would have cast doubt on Long's credibility.

This Court will not reverse the trial court's conclusion that Brigman received effective assistance of counsel absent clear error. *Jividen v. State*, 256 Ga. App. 642, 643-644 (1) (569 SE2d 589) (2002). And to prevail on his claim of ineffective assistance, Brigman bears the burden of showing both that counsel's performance was deficient and that, but for that performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Fortson v. State*, 280 Ga. 435, 436 (2) (629 SE2d 798) (2006).

The only evidence Brigman offered on this ground, however, was his own hearsay testimony as to what he expected the witnesses would have said at trial. Such evidence is insufficient to carry his burden under *Strickland*:

> Hearsay evidence cannot be used either under the first *Strickland* prong to rebut the reasonableness of trial counsel's tactical decision or under the second *Strickland* prong to establish that the defense was prejudiced by counsel's deficient performance. Either the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony.

(Footnote omitted.) *Dickens v. State*, 280 Ga. 320, 322 (2) (627 SE2d 587) (2006). Thus, Brigman failed to establish his claim of ineffective assistance. See *McNeal v. State*, 281 Ga. 427, 428 (2) (637 SE2d 375) (2006).

Moreover, Brigman's trial counsel testified at the hearing on the motion for new trial that he decided, as a matter of trial strategy, not to pursue these other witnesses. If he had listed such witnesses for trial, the prosecutor may have been "tipped off" about their defense to attack Long's credibility on the ground that she was a drug user. Instead, Brigman's attorney chose to surprise the prosecutor by bringing it up for the first time in Brigman's testimony at trial. It is well settled that "trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Harris v. State*, 279 Ga. App. 570, 575-576 (3) (631 SE2d 772) (2006). Brigman has failed to show that his counsel's decision to forgo calling such witnesses was unreasonable.

Accordingly, we find no clear error in the trial court's denial of Brigman's motion for new trial.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 16, 2006.

*David J. Koontz*, for appellant.

*Patrick H. Head, District Attorney, Amelia G. Pray, Assistant District Attorney*, for appellee.