**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2019**

# In the Court of Appeals of Georgia

A18A1446. NIXON v. THE STATE.

McMILLIAN, Judge.

Kevin D. Nixon appeals the trial court's denial of his motion for new trial after a jury convicted him of voluntary manslaughter,[1] aggravated assault, and two counts of possession of a firearm during the commission of a crime. Nixon argues on appeal that the trial court erred in (1) finding that the evidence was sufficient to convict him of voluntary manslaughter; (2) denying his motion for directed verdict as to the aggravated assault charge; and (3) instructing the jury on aggravated assault. Finding no merit to these arguments, we affirm.

---

[1] Nixon originally was charged with murder under Count 1 and felony murder under Count 2 of the indictment. The jury acquitted him on Count 1 and convicted him of the lesser included offense of voluntary manslaughter on Count 2.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that on the night of July 16, 2011, Nixon and others were attending a party in a residential neighborhood, where a large group of people were gathered in a cul-de-sac. During the evening, a fight broke out between Nixon's brother and another attendee, Antonio Jimperson, in the driveway of a house several houses up the street from the cul-de-sac (the "House"). At one point during the fight, Jimperson looked up to see Nixon near the driveway holding a gun, and he ran. Less than a minute later, he heard gunshots. Other witnesses testified that shots were fired into the crowd from the House, and after a few moments other shooters returned fire. Police later determined that other firearms, using two other calibers of ammunition, were also fired during this exchange.

Once the gunfire began, the party attendees began running in all directions. One party guest, Naquan Henderson, was struck by a bullet as he ran away from the fight. He later died from his injuries. Octavious Davis, another guest, was watching the fight, but when he saw a man get off the ground with a gun in his hand, he began to run away. As he was running, he was shot in the back of his right shoulder. Nixon also received a through-and-through shot to his calf.

_____

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Although Nixon initially denied being involved in any fight and said that he knew he did not "pull the trigger," he eventually admitted to police that after his brother and he arrived at the party, people began coming at them and jumped them. Nixon admitted that during the fight, he found a gun on the ground, which had one round in it (he checked), and he shot it into the air. He said he only shot the gun once. Nixon said he dropped the gun when he was shot, but it was never recovered by police.

Another party attendee, Latron Sledge, testified that he did not know who was fighting or who did the shooting. However, Sledge admitted that around the time of the incident, he told police that Nixon was the shooter, identifying him from a photograph, and this statement was admitted into evidence as a prior inconsistent statement. In his earlier statement, Sledge told police that after Nixon's brother became involved in the fight, Nixon asked where his gun was, grabbed a gun "from one of his homeboys," and then started shooting. Sledge also admitted, and his earlier statement reflects, that he told police that he was standing near the shooter when he fired multiple shots from in front of the House.

After Nixon was convicted and his motion for new trial was denied, this appeal followed.

1. Nixon asserts that this and the other evidence presented by the State was insufficient to support his convictions for voluntary manslaughter and aggravated assault. Therefore, he argues that the trial court erred: (a) in denying his motion for new trial as to his conviction for voluntary manslaughter and (b) in denying his motion for directed verdict on the charge of aggravated assault.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction." *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007). On appeal from the denial of a directed verdict and a jury verdict, Nixon no longer enjoys the presumption of innocence, *Scott v. State*, 344 Ga. App. 412, 413 (810 SE2d 613) (2018), and

> the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citation and punctuation omitted.) *Thomas v. State*, 300 Ga. 433, 436 (1) (796 SE2d 242) (2017). See also *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

4

(a) Nixon argues that the trial court erred in finding that the evidence supported his conviction for voluntary manslaughter because the State failed to present evidence showing that he shot Henderson, as it failed to link Nixon to the weapon that fired the projectile later found in Henderson's body.

Here, the State presented direct and circumstantial evidence to show that Nixon was shooting a gun the night of the party. First and foremost, Nixon admitted to shooting a gun that night in the area of the fight. Jimperson testified he looked up during the fight, saw Nixon with a gun, and began running before he heard gunshots less than a minute later. Jimperson testified he did not hear any gunshots before he saw Nixon holding the gun, and Davis testified that he first heard gunshots after he heard someone yell during the fight, "He got a gun." Sledge told police that he was standing near Nixon and saw him shoot a gun multiple times in front of the House. Although this evidence came in the form of a prior inconsistent statement, the jury was entitled to consider the statement as substantive evidence. See *Terrell v. State*, 300 Ga. 81, 85 (1) (793 SE2d 411) (2016) (prior inconsistent statements by a witness can be used at trial both to impeach the witness and as substantive evidence); OCGA § 24-8-801 (d) (1) (A). Sledge also testified at trial that the shooter was wearing a hat and a camouflage bandanna, and he told police in his earlier statement that Nixon was

5

wearing a gray hat and a camouflage bandanna. Police found a gray hat and camouflage bandanna in the House's driveway.

In addition, although the gun used to shoot Henderson was never recovered, a .40-caliber projectile was removed from Henderson's body. Police found all the .40-caliber ballistic evidence at the scene only in or around the driveway of the House where Nixon admits to shooting a gun. No other .40 caliber evidence was found on the scene, and no other ballistic evidence was located in that vicinity. All the other ballistic evidence was located elsewhere: north of the House (.45 caliber casings), in the road (unspent 9 mm rounds and magazine), and in the cul-de-sac (.38 caliber casings). Therefore, all the ballistic evidence matching the projectile found in Henderson's body was located in the vicinity where Nixon was firing a weapon. Moreover, drops of blood later identified as belonging to Nixon were found in the driveway near a .40-caliber cartridge and also by a car parked in the driveway near the gray hat and camouflage bandanna.

We find that this and other evidence at trial, though circumstantial, was sufficient to support the jury's verdict on the voluntary manslaughter charge under

OCGA § 16-5-2[3] beyond a reasonable doubt. Nixon was the only person identified as shooting a gun near the ballistic evidence matching the fatal bullet, and substantial physical evidence puts him near and around that evidence. We are aware that OCGA § 24-14-6 provides that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." However, "unless the verdict is unsupportable as a matter of law, it is for the jury to determine whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt." (Citation omitted.) *Murphy v. State*, 272 Ga. App. 287, 289-90 (2) (612 SE2d 104) (2005). Therefore, "questions as to the reasonableness of a defendant's explanation of circumstantial facts or an alternative hypothesis of events are also for the jury to resolve." *Kelly v. State*, 313 Ga. App. 582, 583 (722 SE2d 175) (2012). Accordingly, we affirm Nixon's conviction for voluntary manslaughter.

---

[3] OCGA § 16-5-2 (a) provides that "[a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]"

(b) Nixon further asserts that the trial court erred in denying his motion for directed verdict on aggravated assault as charged in the indictment. The indictment charged that Nixon committed the offense of aggravated assault in that he "did make an assault upon the person of Octavius Anthony Davis, with an unknown type handgun, a deadly weapon, by shooting him, contrary to the laws of said State, the good order, peace and dignity thereof." Nixon argues that the State presented no evidence showing that he shot Davis.

As with Henderson, the State presented circumstantial evidence to establish this element of the crime as charged. Davis testified that he was about three houses down from the fight when it began, and he walked up from the cul-de-sac toward the House and sat on a car about 20 feet away.[4] Davis was just getting off the car and standing in the middle of the street when he heard someone say "he got a gun," and he heard gunshots "right after." He ran and was across the street from the House when he got shot, standing in the street at about the third house on that side of the road. Davis told his friends he had been shot, and they got in a car and sped off. Both Davis and another man in the car testified that as they were leaving the scene, they heard

[4] He described the fight as occurring at the first or second house on the street, and the car he was sitting on was between the second and third house.

more gunshots. Davis received medical treatment for his injuries, but at the time of trial, the bullet was still in his back and he was planning on a later surgery to have it removed.

The evidence demonstrates that Davis was across the street from the House when he was shot, as was Henderson.[5] Another party guest and the House's owner each testified that the first shots came from the direction of the House, and Jimperson's testimony supports a similar inference. Davis was shot in the back of his shoulder after he turned and ran during the first wave of gunshots. Moreover, Jimperson testified that after the initial shots stopped, he emerged from under the car where he was hiding and ran beside a house. He heard no shots as he was running. When he stopped at the house, he heard more shots, indicating a time lull between the initial shots and when more shooting began. The House's owner also testified that the first shots were followed by shots aimed at his house.

It is well-settled that "[j]urors are normally entitled to make reasonable inferences from circumstantial evidence regarding all sorts of facts, including the facts necessary to find defendants guilty beyond a reasonable doubt of [a crime]."

---

[5] The crime scene investigators found a blood pool later identified as belonging to Henderson across the street and one house down from the House in the direction of the cul-de-sac.

*Worthen v. State*, __ Ga. __ (3) (c), 2019 Ga. LEXIS 22 (Case No. S18A1212, decided Jan. 22, 2019). See also *Williams v. State*, 304 Ga. 658 (821 SE2d 351) (2018). Therefore, our review of the verdict leaves to the jury the determination of what reasonable inferences may be made from the facts. *Jackson*, 443 U.S. at 318-319; *Menzies v. State*, 304 Ga. 156, 160 (II) (816 SE2d 638) (2018) (It is for the jury to determine the reasonable inferences to be made "from basic facts to ultimate facts.") (citation and punctuation omitted). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010).

We find that the evidence at trial would have supported reasonable inferences by the jury that Davis was shot in Nixon's initial wave of gunfire coming *from* the House; that a later wave of gunfire came *toward* the House; that it was this later wave of shots that Davis and the other man heard as they sped away from the scene; that Davis was shot on the same side of the street where Henderson was shot; and, therefore, that Davis was also shot by Nixon. Accordingly, we find that the evidence at trial was sufficient to support Nixon's aggravated assault conviction beyond a reasonable doubt.

2. Nixon also contends that the trial court erred in charging the jury on aggravated assault. He argues that the jury charge broadened the manner in which the jury could convict him of the crime and relieved the jury of the burden of finding a required averment in the indictment: that he shot Davis.

The trial judge gave the pattern jury charge on aggravated assault, tracking the language of the statute, as follows:

> A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim, or intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury.

See OCGA § 16-5-20 (a) (2); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2007), § 2.20.21. Nixon objects to the trial court's further charge that

> [t]he State must prove as a material element of aggravated assault that the assault was made with a deadly weapon. A firearm when used as such is a deadly weapon as a matter of law. *Intentionally firing a gun at another, without justification, is sufficient in and of itself to support a conviction of aggravated assault*.

(Emphasis supplied.) He argues that the italicized portion of the charge allowed the

jury to convict him of aggravated assault if the evidence merely showed that he shot

a gun, without requiring proof that he shot Davis.[6] He asserts that this would create

a fatal variance. See *Ford-Calhoun v. State*, 327 Ga. App. 835, 836 (1) (761 SE2d

388) (2014) ("To permit the prosecution to prove that a crime was committed in a

wholly different manner than that specifically alleged in the indictment would subject

the accused to unfair surprise at trial and constitute a fatal variance.") (citation

omitted.). However, we have already found that the evidence supported the allegation

in the indictment that Nixon shot Davis, and we disagree that the trial court's charge

created the possibility that the jury could have found defendant guilty based on

evidence that varied from such proof.

Even assuming, without deciding, that the italicized portion of the aggravated

assault charge was improper, it is axiomatic that appellate courts review the trial

court's charge to the jury as a whole "to determine whether the jury was fully and

fairly instructed on the law of the case." *Manning v. State*, 303 Ga. 723, 728 (4) (814

---

[6] We note that this Court has previously determined that the cited language is a correct statement of Georgia law. "Georgia courts have repeatedly held that 'intentionally firing a gun at another, absent justification, is sufficient in and of itself to support a conviction of aggravated assault.'" (Citations omitted.) *Lunsford v. State*, 260 Ga. App. 818, 823 (5) (581 SE2d 638) (2003).

12

SE2d 730) (2018). Here, the trial court charged the jury under the applicable provisions of OCGA §§ 16-5-21 (a) and 16-5-20 (a) defining aggravated assault and simple assault, respectively.[7] The trial court explained to the jury that it would have a copy of the indictment during deliberations "so that you can refer to exactly what is alleged in the indictment," and that the indictment and Nixon's plea formed the issue the jury was to decide. The trial court further charged on the presumption of innocence, reasonable doubt, and the State's burden "to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Later, while reviewing the verdict form with the jury, the trial court charged, "Count Four is aggravated assault. Read the indictment. Be clear in your mind as to what that charge is, and then it is not guilty or guilty."

We find that the jury charge when considered as a whole did not improperly broaden the manner in which the jury could convict Nixon of aggravated assault, nor

---

[7] The pertinent portion of OCGA § 16-5-21 provides, "(a) A person commits the offense of aggravated assault when he or she assaults: . . . (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" OCGA § 16-5-20 (a) provides that "[a] person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

13

did it relieve the jury of the burden of finding that Nixon shot Davis in order to convict him of that crime. As our Supreme Court has found,

> Even where a jury instruction is defective in that the trial court instructs the jury that an offense could be committed by other statutory methods than the one method charged in the indictment . . . such a defect is cured where, as here, the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

(Citations and punctuation omitted.) *Flournoy v. State*, 294 Ga. 741, 744 (2) (755 SE2d 777) (2014). Compare *Talton v. State*, 254 Ga. App. 111, 113-14 (1) (561 SE2d 139) (2002) (the trial court failed to charge the jury on aggravated assault by shooting the victim, and instead charged that the State need only show that the person was put in reasonable apprehension of immediately receiving a violent injury and gave no further limiting instructions). Accordingly, we find this enumeration of error to be without merit.

*Judgment affirmed. Barnes, P. J., and Reese, J., concur.*