## S93A0824. HOPKINS v. THE STATE.
### (434 SE2d 459)

SEARS-COLLINS, Justice.

The appellant, David Hopkins, was found guilty of the felony murder of his ex-wife and sentenced to life in prison.[1] On appeal Hopkins raises numerous issues that he contends warrants reversal of his conviction. We find no error and affirm.

Hopkins and the victim were married in 1980 and divorced in 1991. However, after the divorce Hopkins and the victim began living together again. About midnight on March 31, 1992, Officer Pam Grimes of the Gwinnett County Police Department was called to the house where Hopkins and the victim lived. Officer Grimes asked Hopkins, who was standing in the driveway, what had happened. He responded that he and his wife had been arguing; that he pulled a gun out of a dresser and pulled the hammer back; that his wife's hand hit the gun, causing it to discharge accidentally; and that the bullet struck his wife in the head.

Officer Grimes read Hopkins his *Miranda* rights. After doing so, the officer asked Hopkins if he wished to talk with the police without a lawyer. He stated that "he didn't think he should say anything without retaining a lawyer." Officer Grimes testified she did not ask Hopkins any questions. Grimes was assigned to drive Hopkins to the police station, and she did so about 15 minutes after reading Hopkins his rights. Hopkins was seated in the back of her patrol car, and was not handcuffed. According to Grimes, Hopkins leaned forward and asked her if he could talk to her. She said, "sure," and Hopkins then told her that that night he had become angry at the victim because she had not been to the grocery store that day and had not put sheets on their bed. Hopkins and his ex-wife argued and he went to the dresser that was in the bedroom, opened a drawer and threw some of her clothes at her and told her to get out. He then pulled out a gun that was in the dresser drawer, pointed it at her, and shot her in the head.

---

[1] The crime occurred on March 31, 1992. Hopkins was indicted June 2, 1992. On September 25, 1992, Hopkins was found guilty and sentenced. On October 1 Hopkins filed a motion for new trial. The court reporter certified the transcript on October 31, 1992. On November 13, 1992, and January 29, 1993, Hopkins filed amendments to his motion for new trial. On February 3, 1993, the trial court denied the motion for new trial. Hopkins filed a notice of appeal on February 26, 1993, and the appeal was submitted for decision without oral argument on April 22, 1993.

After Officer Grimes drove Hopkins to police headquarters, Officer Tkacik took custody of Hopkins. Subsequently, Officer Tkacik read Hopkins his *Miranda* rights and asked him if he understood each one of them. Officer Tkacik testified that Hopkins said he understood each one and agreed to talk with Tkacik. Hopkins stated that he became angry at his ex-wife because she did not have sheets on the water bed and had not purchased groceries. He added that they argued for a while and then his ex-wife said she was going to leave. He then opened the top drawer of her dresser, picked up a handful of her clothes, and tossed them at her. At that time a gun discharged and the bullet struck his ex-wife. Hopkins said that he did not realize the gun was in the top drawer when he grabbed the clothes. According to Hopkins, the gun fired from a distance of six or seven feet from the victim.

At trial Hopkins testified that on the evening of the shooting he asked the victim if she had bought groceries that day. She responded that she had not. He said they began to argue and each threatened to leave the other. According to Hopkins, he picked up a handful of the victim's clothes out of a dresser drawer and threw them on the bed. He testified that the gun apparently was in the clothes because, when he threw them, the gun fell on the bed. He then saw the victim moving for the gun, at which time he also reached for the gun. He added that that was when the gun went off. Hopkins testified that he could not remember whether he or the victim got to the gun first or whether he or the victim actually obtained possession of the gun. He believed that the gun fired accidentally.

The medical examiner who performed an autopsy on the victim testified that the victim died of a gunshot wound between the eyes. The medical examiner added that stippling around the wound indicated that the gun probably had been fired from one to six inches from the victim and in any event not over ten inches.

Moreover, the state's ballistic's expert testified that the murder weapon could be fired by a single-action or double-action trigger pull. Firing the gun in single action required three pounds of pressure on the trigger; firing the gun in double action required nine pounds of pressure. He added that the gun also had two safety mechanisms that made it difficult for the gun to discharge accidentally. He testified that if the gun were cocked with the hammer back a strong blow could possibly override both safety mechanisms and the gun would fire. However, he said that he could determine if the gun had ever accidentally discharged because, if it had, the gun would not operate properly thereafter. According to him, the murder weapon had never accidentally discharged. Moreover, he testified that, based on the stippling pattern, the victim had been shot from two to three inches.

The state also introduced an incriminating statement that Hop-

kins made to an inmate who was in jail with Hopkins after the shooting. The inmate testified that Hopkins told him that after he and the victim argued, he began throwing some of the victim's clothes out of the dresser drawer. Hopkins saw the gun in the drawer, pulled it out, and told the victim, "I'll kill you, you SOB." Hopkins told the inmate that he pulled the trigger once but the gun did not fire, so he pulled the trigger again. Hopkins said, "I shot that bitch right there."

1. Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the defendant guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Hopkins raises an issue based on *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). Hopkins acknowledges that the trial court did not give a sequential charge on felony murder and voluntary manslaughter. Instead, he contends that the court should have "admonished [the jury] that if it finds provocation and passion with respect to the act which caused the killing, it could not find felony murder, but would be authorized to find voluntary manslaughter." *Edge* at 867, fn. 3. However, we conclude that Hopkins is procedurally barred from asserting as error the trial court's failure to give such a charge.

In *McCoy v. State*, 262 Ga. 699, 700-701 (2) (425 SE2d 646) (1993), we held that when the trial court asks a defendant whether he has any exceptions to the court's charge, a defendant may preserve his objections to the charge by making specific objections at trial or by reserving his right to object on motion for new trial or on appeal. In this case, when the trial court asked for objections to the charge, Hopkins did not reserve his right to object to the court's charge on appeal and did not specifically object to the court's failure to admonish the jury. He therefore failed to preserve this issue for appeal. *McCoy*, supra, 262 Ga. at 700-701.[2]

3. In his second enumeration of error Hopkins argues that the trial court erred by admitting into evidence the statements he made to Officer Grimes while in her police car and to Officer Tkacik at police headquarters. We conclude both statements were admissible.

(a) Hopkins contends the statement he made to Officer Grimes on the way to the police station was inadmissible because he had in-

---

[2] In fact, Hopkins did voice one objection based on *Edge*. He contended that the reasonable doubt charge the trial court gave following the non-sequential instructions on malice murder, felony murder, and voluntary manslaughter might have led the jury to believe that they had to acquit Hopkins of malice murder and felony murder before considering voluntary manslaughter. It is unclear whether Hopkins is asserting error as to this instruction on appeal, but in the event he is, we find it to be without merit, as the reasonable doubt instruction did not have the effect of making the jury's consideration of malice murder, felony murder and voluntary manslaughter sequential.

voked his right to an attorney and because he did not initiate further conversation with Officer Grimes. Even assuming that Hopkins invoked his right to an attorney when Officer Grimes first read him his *Miranda* rights, we conclude the subsequent statement to Officer Grimes was admissible.

If a defendant invokes his right to counsel, police may not thereafter interrogate the defendant until counsel has been made available to him unless the defendant initiates further discussion with the police and knowingly and intelligently waives the right he had invoked. *Byrd v. State*, 261 Ga. 202 (2) (403 SE2d 38) (1991). However, if a defendant initiates further discussions with the police and is not interrogated but volunteers a statement, the police may listen to that statement and use it against him at trial. *Zubiadul v. State*, 193 Ga. App. 235, 236-238 (387 SE2d 431) (1989); *Edwards v. Arizona*, 451 U. S. 477, 485-486 (101 SC 1880, 68 LE2d 378) (1981). Here, the record shows that Officer Grimes did not interrogate Hopkins after he initiated discussions with her but rather listened to his volunteered statement. We therefore conclude that the statement was admissible. *Zubiadul*, supra, 193 Ga. App at 236-238; *Edwards*, supra, 451 U. S. at 485-486.

(b) Hopkins next contends that the statement he made to Officer Tkacik at the police station was inadmissible for two reasons. We find no merit to either one.

Hopkins first argues that Officer Tkacik violated *Edwards* by reading him his rights and interrogating him after he had invoked his right to counsel when with Officer Grimes and that his statement was thus inadmissible. However, the contention that Officer Tkacik violated *Edwards* has no merit because, once Hopkins initiated conversation with Officer Grimes, Officer Tkacik, even though he was unaware of that initiation, was free to question Hopkins so long as Hopkins made a knowing and intelligent waiver of his rights. *Willie v. Maggio*, 737 F2d 1372, 1384 (5) (5th Cir. 1984), cert. denied 469 U. S. 1002 (105 SC 415, 83 LE2d 342) (1984); LaFave & Israel, Criminal Procedure, Vol. 1, § 6.9, 1991 Supp., p. 139. "The critical inquiry [under *Edwards*] is whether [Hopkins] was further interrogated before he reinitiated conversation with law enforcement officials. He was not, and thus *Edwards* was not violated." *Maggio*, supra, 737 F2d at 1384.

Next, Hopkins contends that the statement to Officer Tkacik was inadmissible because he did not make a knowing and intelligent waiver of his *Miranda* rights. However, from our review of the record, we agree with the trial court's conclusion that Hopkins did make a knowing and intelligent waiver of his rights before Officer Tkacik interrogated him.

For these reasons, the trial court did not err in admitting into

evidence the statement Hopkins made to Officer Tkacik.

4. We have examined Hopkins remaining enumerations of error and conclude that they are without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 1993.

*Robert L. Waller III,* for appellant.

*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney, Michael J. Bowers, Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.