## S08A1079. HOLMES v. THE STATE.
### (667 SE2d 71)

THOMPSON, Justice.

Defendant Recardo Holmes was convicted of malice murder and rape in connection with the death of 62-year-old Laverne Jackson.[1] He appeals, asserting, inter alia, that a DNA sample was collected from him under false pretenses and that, therefore, evidence pertaining to the sample should have been suppressed. Finding no error, we affirm.

The victim was found lying face down and naked on her living room floor. She had seminal fluid on her leg and buttocks, and in her vagina, a massive wound in the back of the head caused by at least five individual blows that had driven pieces of her skull into her brain, and ligature marks on her neck that were severe enough to fracture her voice box.

In a conversation with a co-worker, Joe Gregory, Holmes said that, the previous evening, he hit a woman on the back of the head because "the bitch wouldn't give me none." Holmes was arrested later for public indecency and a DNA sample was obtained from him. The sample taken from Holmes was compared to the DNA found on the victim and it was determined to be a match.

In speaking with a detective about the murder, Holmes admitted that he killed the victim: "I killed her. I don't know how or why. I can still see her lying on the floor." Holmes added that he had psychological problems and suffered from paranoia and schizophrenia.

1. The evidence is sufficient to enable any rational trier of fact to find defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The evidence adduced at a hearing on defendant's motion to

---

[1] The crimes occurred on July 18 or 19, 1999. Holmes was indicted on August 28, 2000, and charged with burglary, aggravated assault, rape, felony murder and malice murder. The burglary count was nolle prossed. Trial commenced on September 9, 2002, and the jury returned its verdict on September 11, 2002, finding defendant guilty on all charges. The trial court sentenced Holmes on September 25, 2002, to consecutive life terms for malice murder and rape. The aggravated assault and felony murder charges were merged and vacated for sentencing purposes. Holmes sought, and was granted, permission to file an out-of-time motion for new trial. The motion was filed on January 13, 2003, and denied on August 15, 2007. Holmes filed a notice of appeal on September 6, 2007. The case was docketed in this Court on March 13, 2008, and submitted for decision on briefs on May 5, 2008.

suppress shows that defendant was arrested because he was exposing himself in public; that a detective asked defendant if he would be willing to give a DNA sample because it was department policy to seek such evidence whenever it "ran into cases like that"; but that, in fact, there was no such department policy. There was also evidence that the detective informed defendant that any time a DNA sample was obtained from an individual in custody it would be used and tested for comparison purposes; and that defendant gave his consent orally and in writing.

Relying upon *State v. Gerace*, 210 Ga. App. 874 (437 SE2d 862) (1993) and *Beasley v. State*, 204 Ga. App. 214 (419 SE2d 92) (1992), defendant argues that his consent to give the DNA sample was obtained deceptively and in violation of his Fourth Amendment rights because he was not advised that it would be used in an independent criminal prosecution. We disagree. In *Gerace* and *Beasley*, the Court of Appeals held that blood samples taken from a suspect in a criminal matter may not be used for purposes for which a suspect was not advised and to which he did not, therefore, consent. We have no quarrel with this rule of law when a defendant's consent is given conditionally, or in a limited context. See *Turpin v. Helmeci*, 271 Ga. 224, 225 (518 SE2d 887) (1999). The rule is not applicable here, however, because the detective informed defendant that his DNA sample would be used for comparison with other such samples and no limits were placed on the scope of Holmes' consent.

3. Defendant contends the trial court erred in refusing to grant his motion for change of venue. The motion was predicated on the fact that, the day before trial, a local newspaper published an article which stated that the trial judge ruled Holmes' statements to police were admissible, and that Holmes' DNA was obtained in connection with an indecent exposure charge.

The trial court did not abuse its discretion in denying defendant's motion for change of venue based upon pretrial publicity because Holmes failed to show that the pretrial publicity created an inherently prejudicial atmosphere or affected the jurors' ability to be fair and impartial. See *Eckman v. State*, 274 Ga. 63, 68 (4) (548 SE2d 310) (2001); *Roundtree v. State*, 270 Ga. 504, 505 (2) (511 SE2d 190) (1999).

4. The trial court did not abuse its discretion in admitting photographs which depicted the crime scene and the nature and location of the victim's injuries. *Oliver v. State*, 276 Ga. 665, 668 (581 SE2d 538) (2003); *Brooks v. State*, 258 Ga. 20, 22 (365 SE2d 97) (1988).

5. Defendant asserts that a custodial statement given to police should have been ruled inadmissible because he invoked his right to counsel. This assertion is without merit.

When a defendant invokes his right to counsel, police must cease all further interrogation until counsel is made available to defendant. However, if after invoking his right to counsel a defendant initiates further communication with police and knowingly and intelligently waives his right to counsel, police can question defendant further. *Hopkins v. State*, 263 Ga. 354, 356 (3) (434 SE2d 459) (1993). That is exactly what happened here. When defendant was questioned initially, he informed the detective that he wanted a lawyer; the detective stopped the interview and told defendant he would be going to jail and charged with murder. Defendant then said that if he could speak with his family, he would tell the detective what happened. After speaking with his family, defendant was willing to converse with the detective. He was again advised of his constitutional rights, and he signed a waiver of rights form. Asked again if he was willing to talk without a lawyer, defendant replied affirmatively. The next day, defendant again asked to speak with police. Again, defendant was advised of his rights; and he signed yet another waiver of rights form. The evidence supports the trial court's finding that defendant waived his right to counsel and that his statements to the detective were made voluntarily. *Hanifa v. State*, 269 Ga. 797, 805 (505 SE2d 731) (1998).

6. Alleging the State failed to timely provide defendant with statements he made to Joe Gregory and the police, see OCGA § 17-16-8, defendant asserts the trial court erred in refusing to suppress his statements and in permitting Gregory to testify. We disagree.

OCGA § 17-16-6 authorizes a trial court to prohibit the introduction of evidence not disclosed; but it also provides that a trial court can grant a continuance, order the discovery or inspection of documents, or make any additional order it deems just and proper under the circumstances of the case.

> In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial. [Cit.]

*Blankenship v. State*, 229 Ga. App. 793, 794 (494 SE2d 758) (1997). The State made its entire police file available to defendant almost two weeks before trial, well in advance of the statutory ten-day requirement. The file contained defendant's statements and physical evidence. The State was unaware of Gregory's statement until six days before trial; however, it informed defendant about the

statement as soon as it was discovered. Two days later, defendant was made aware of the fact that the State subpoenaed Gregory and planned to use him as a witness. Defendant attempted to keep Gregory from testifying, pointing out that he was not given timely notice of Gregory's statement. Finding no bad faith on the part of the State in failing to disclose defendant's statements, the trial court ruled that the statements would be admitted and that Gregory would be permitted to testify. In so ruling, the court added that it was willing to make Gregory available to defendant for an interview and to give defendant all the time he needed to question the witness before he took the stand. In light of these facts, it cannot be said that the State acted in bad faith or that defendant was prejudiced by the State's failure to more timely provide defendant with his statements to Gregory and the police. It follows that the trial court did not abuse its discretion in admitting defendant's statements and in permitting Gregory to testify. Compare *Watson v. State*, 278 Ga. 763, 774 (14) (604 SE2d 804) (2004) with *Peeples v. State*, 234 Ga. App. 454, 456 (507 SE2d 197) (1998).

7. Defendant contends the trial court erred in refusing the jury's request either to replay defendant's tape recorded statements or to be given a transcript of the recordings. This was a matter that was addressed to the sound discretion of the trial court, *Murphy v. State*, 272 Ga. App. 287, 290 (612 SE2d 104) (2005), and no abuse of discretion has been shown. See *Williams v. State*, 205 Ga. App. 445 (422 SE2d 309) (1992).

8. The trial court permitted the State to file a brief opposing defendant's motion for new trial several months after it was due. This was not error. Unless it contravenes a rule of procedure or prejudices a defendant, a trial court has discretion to grant extensions of time to respond to a motion. See *Quinn v. State*, 234 Ga. App. 360, 362 (5) (506 SE2d 890) (1998) (motion for extension of time is addressed to sound discretion of trial court).

*Judgment affirmed. All the Justices concur.*

CARLEY, Justice, concurring.

Although I concur fully in the majority opinion, I write separately with respect to Division 2 in order to point out that, even if the detective had not informed Holmes that his DNA sample would be used for comparison purposes, the trial court still would not have erred in denying the motion to suppress evidence pertaining to that sample.

> The police were not required to explain to [Holmes] that his blood or hair could be used in prosecutions involving other victims, or that he had a right to refuse consent. [Cits.]

Further, like a fingerprint, DNA remains the same no matter how many times blood is drawn and tested and a DNA profile can be used to inculpate or exculpate suspects in other investigations without additional invasive procedures. It would not be reasonable to require law enforcement personnel to obtain additional consent or another search warrant every time a validly-obtained DNA profile is used for comparison in another investigation.

*Pace v. State*, 271 Ga. 829, 832 (2) (524 SE2d 490) (1999).

MELTON, Justice, concurring.

While I concur fully with the result reached by the majority, I write separately to emphasize that Division 2 of the majority opinion should not be read to imply that this Court in any way approves of the police using potentially deceptive practices to convince a defendant to provide them with a DNA sample. "A consent which is the product of coercion or deceit on the part of the police is invalid. [Cits.]" *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975). Here, the totality of the circumstances authorized the trial court to conclude that the police did not engage in deceptive practices in their efforts to obtain Holmes' consent.

As the majority notes in Division 2, the record reveals that the detective informed Holmes, in part, that he needed to provide a DNA sample to police in connection with a standard police department policy. More specifically, however, the detective testified at the motion to suppress hearing that, although there was no formal department policy about DNA tests, the members of the department had "talked about anytime [that they] ran any kind of case involving sexual acts [such as exposing oneself in public, they] would take DNA samples and utilize them." Consistent with these departmental discussions, the detective informed Holmes that the police conducted "DNA sampling anytime [they] ran into cases like [his]." The detective did not stop there, however. He also informed Holmes that his DNA sample would be used for comparison purposes. Thus, contrary to Holmes' claim that the police misinformed him that his DNA sample would only be collected as part of a formal police policy and would not be used for any other purpose, Holmes was specifically informed that (1) the *request* for a DNA sample was routine in his type of case, and (2) that his DNA sample was being taken for comparison purposes. Based on the detective's testimony alone, the trial court was authorized to conclude that the police did not deceive Holmes in their efforts to obtain his consent to provide a DNA sample.

Moreover, in addition to being informed orally by the detective

that his DNA sample would be used for comparison purposes, Holmes also signed a waiver of rights form that specifically informed him of (1) his constitutional right not to have a warrantless search made of his person, (2) his right to refuse to consent to such a search, and (3) the fact that blood would be drawn from him for DNA comparison purposes. Thus, again, under the totality of the circumstances here, the trial court did not err in concluding that Holmes voluntarily consented to provide a DNA sample to police. See, e.g., *Pace v. State*, 271 Ga. 829 (2) (524 SE2d 490) (1999). Accordingly the trial court did not err in denying Holmes' motion to suppress.

DECIDED SEPTEMBER 22, 2008.

*Donald L. Lamberth*, for appellant.

*Cecilia Marie Cooper, District Attorney, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.