## S10A0497. CHILDS v. THE STATE.
### (696 SE2d 670)

NAHMIAS, Justice.

Isaiah Childs appeals from his conviction by a Wilcox County jury of one count of the sale of cocaine.[1] Childs contends, among other things, that the trial court erred in denying his motion to declare OCGA § 24-9-84.1 (a) (2) unconstitutional. Finding no merit to Childs's contentions, we affirm.

1. Childs contends that the evidence was insufficient to support his conviction. Viewed in the light most favorable to the jury's verdict, the evidence at trial included the following. On March 4, 2006, Alan Mann, an investigator with a drug task force, sent an informant, Ethel Miller, to a high drug area in Rochelle, Georgia, to attempt to make a drug purchase. Investigator Mann provided Miller with money to make the purchase and outfitted her car with video equipment to record the transaction. Mann testified that, before the purchase, he searched Miller's vehicle to make sure there were no drugs in it. He also searched Miller and Miller's husband, Charles Davis, who was accompanying her because she could not drive. Investigator Mann observed Miller from a distance and saw Childs

---

[1] The crime occurred on March 4, 2006, and Childs was indicted on August 28, 2006. A jury found Childs guilty on December 12, 2006, and he was sentenced to 15 years in prison and 15 years on probation. Childs filed a motion for new trial on January 8, 2007. Childs amended his motion several times, and the trial court denied the motion, as amended, on September 15, 2008. On September 30, 2008, Childs filed a notice of appeal to the Court of Appeals. On April 20, 2009, the appeal was docketed in the Court of Appeals. On December 1, 2009, the Court of Appeals transferred the appeal to this Court. The appeal was docketed for hearing during the January 2010 Term and later submitted for decision on the briefs.

approach her vehicle near a club. Mann did not see any transaction at that time. He testified that Miller drove off, and that the video, which was played for the jury, showed that she stopped nearby, met with Childs, and took delivery of a substance from him. After the transaction, Miller met Investigator Mann and turned over a piece of crack cocaine, which she had placed into an evidence bag Mann had given her. Mann searched the car, Miller, and Davis again, and found no evidence of any other cocaine.

Miller has been addicted to drugs for several years and was previously convicted of selling cocaine. She became an informant to lighten her prison sentence for a violation of her probation. Miller testified that on March 4, 2006, Investigator Mann searched her and the vehicle, wired up the video equipment, and gave her $40 to make a purchase. Miller went to a club where she thought drug dealers would be selling. She had known Childs her whole life and saw him standing outside the club. She called him over and asked if he had any drugs. Childs told her that he did not but that he could get some. Childs drove off, and when he did not return, Miller and Davis drove in the direction he had gone and met him at a nearby warehouse. Miller paid Childs $20 for a small piece of cocaine, and she put the cocaine in an evidence bag. She then met with Investigator Mann and gave the cocaine to him.

Davis testified that he drove his wife on the day of the crime, that Investigator Mann searched him before the transaction, that he did not have any drugs at the time, and that there were no drugs in the vehicle. He said that, when they first saw Childs, Miller asked Childs if he had any drugs. Childs said that he did not but that he would go get some. According to Davis, Childs left, but later met them at the warehouse and sold the cocaine to Miller.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient for the jury rationally to have found Childs guilty beyond a reasonable doubt of the sale of cocaine. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. At trial, Investigator Mann explained that he searches an informant's vehicle inside and out to make sure the informant has no drugs and that he usually places the video camera in the vehicle on the side the informant is on "so that when the drug dealer would walk up to the window, the video camera will pick up the transaction." Childs contends the trial court erred in overruling his objection to this testimony, which he claims indicated that anyone who walked up to the window of Miller's vehicle was a drug dealer and

therefore constituted impermissible character evidence. We disagree, because it is clear, in context, that Mann's statement was not directed at Childs, but was background testimony as to how a controlled drug purchase is typically arranged.

3. *Childs did not testify or present any evidence.* Defense counsel stated that Childs would not testify because OCGA § 24-9-84.1 (a) (2) would then allow the State to impeach him with evidence of his prior felony convictions for the possession of cocaine, the possession of marijuana, and burglary. Childs moved the trial court to rule the statute unconstitutional on the ground it unconstitutionally burdened his right to testify and therefore violated his due process rights. See *Rock v. Arkansas*, 483 U. S. 44, 51-53 (107 SC 2704, 97 LE2d 37) (1987). Childs now contends that the trial court erred in denying his motion.

OCGA § 24-9-84.1 was enacted in 2005 and applies to all trials that occur "on or after July 1, 2005." See Ga. Laws 2005, p. 20, §§ 16, 17. Subsection (a) (2) provides that, if the defendant testifies, "[e]vidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant."[2] Childs cites no authority for the proposition that OCGA § 24-9-84.1 (a) (2) is unconstitutional, and we hold that it is not.

*Ohler v. United States*, 529 U. S. 753, 759-760 (120 SC 1851, 146 LE2d 826) (2000), addressed an analogous situation. Federal Rule of Evidence 609 (a) provides, in relevant part, that "evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." In *Ohler*, the district court ruled in limine that the government could impeach Ohler with a prior drug conviction if she testified. See 529 U. S. at 754. Ohler elected to testify and preemptively introduced evidence of her prior conviction on direct examination, instead of waiting for the government to impeach her with it on cross. See id.

On appeal, Ohler attacked the district court's ruling in limine that the government could impeach her with the prior conviction, but the Ninth Circuit held that she had waived her objection by introducing the evidence herself. See *Ohler*, 529 U. S. at 754-755. At

---

[2] OCGA § 24-9-84.1 (a) (3), which provides that "[e]vidence that . . . the defendant has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement," is not implicated in this case. Under subsection (a) (3), evidence of the prior crime is admissible without regard to the balancing test set forth in subsection (a) (2).

the Supreme Court, Ohler argued that the waiver rule unconstitutionally burdened her right to testify. The Court disagreed:

> She relies on *Rock v. Arkansas*, . . . where we held that a prohibition of hypnotically refreshed testimony interfered with the defendant's right to testify. But here the rule in question does not prevent Ohler from taking the stand and presenting any admissible testimony which she chooses. She is of course subject to cross-examination and subject to impeachment by the use of a prior conviction. In a sense, the use of these tactics by the Government may deter a defendant from taking the stand. But, as we said in *McGautha v. California*, 402 U. S. 183, 215 [(91 SC 1454, 28 LE2d 711)] (1971):
>
>> "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. . . . It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. . . . Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify."

*Ohler*, 529 U. S. at 759.

Other courts to consider the issue have likewise held that due process is not violated by permitting the impeachment of a testifying defendant with prior convictions. Thus, the Court of Appeals for the District of Columbia stated many years ago that

> appellant has presented no cases in this or any other jurisdiction, and we have found none, which specifically find that due process is denied in criminal trials solely because a defendant who has taken the witness stand is impeached by the introduction of a valid prior conviction. On the contrary, our reading of recent federal and state cases indicates quite clearly that the tradition of utilizing evidence of valid prior convictions for purposes of impeachment is in no manner being considered as violative of due process.

*Dixon v. United States*, 287 A2d 89, 93 (D.C. 1972) (citing cases). Similarly, the Connecticut Supreme Court has explained that

> [w]e recognize that a defendant may be faced with the dilemma of either testifying and facing the possibility of impeachment by prior convictions or not taking the stand and thus not personally being able to present his version of the events to the jury. Nevertheless, it has been recognized that the constitutional right to testify does not carry with it a right to prohibit impeachment by prior convictions.

*State v. Harrell*, 506 A2d 1041, 1045 (Conn. 1986) (citing cases). Accord *People v. Rosenberg*, 820 NE2d 440, 448 (Ill. 2004); *State v. Raydo*, 713 So2d 996, 999 (Fla. 1998); *State v. Gassler*, 505 NW2d 62, 67 (Minn. 1993); *State v. Minnieweather*, 781 P2d 401, 402 (Or. Ct. App. 1989); *Commonwealth v. Maguire*, 467 NE2d 112, 115, n. 8 (Mass. 1984); *Lowell v. State*, 574 P2d 1281, 1282-1283 (Alaska 1978).

We agree with this apparently unanimous authority and also note that, in Georgia, defendants are actually subject to more limited impeachment than all other witnesses who have prior felony convictions. Compare OCGA § 24-9-84.1 (a) (1) (to impeach a witness other than an accused, the court must determine that the probative value of the prior felony simply "outweighs its prejudicial effect") with OCGA § 24-9-84.1 (a) (2) (to impeach an accused, the court must determine that the probative value of the prior felony "substantially outweighs its prejudicial effect"). We therefore hold that Childs's constitutional attack on OCGA § 24-9-84.1 (a) (2) is meritless.

4. During the direct examination of Miller, the prosecutor asked if she "[had] those drugs and put them in that bag and pass[ed] them off as [Childs's]." Miller said no and volunteered that the night before the charged drug transaction took place, Childs had given her drugs for her personal use. She continued, "He'll give me some if I ain't got none. He's very nice to me." Childs moved for a mistrial. The trial court denied the motion but instructed the jury to disregard the unsolicited testimony.

Childs contends the trial court erred in denying his motion for mistrial. "Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Ottis v. State*, 271 Ga. 200, 201 (517 SE2d 525) (1999). The trial court here did not abuse its broad discretion in determining that its curative instruction was sufficient to preserve Childs's right to a fair trial and in denying his

mistrial motion. See id.

5. Childs contends that the trial court erred by allowing the State, over his objection, to call Davis as a witness when his name did not appear on the State's witness list. We conclude, however, that the trial court did not abuse its discretion in permitting Davis to testify.

OCGA § 17-16-6 sets forth the remedies available to a defendant upon the State's failure to comply with discovery:

> "[T]he court may order the [S]tate to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances."

*Cockrell v. State,* 281 Ga. 536, 539 (640 SE2d 262) (2007) (quoting OCGA § 17-16-6). " 'In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial.' " *Holmes v. State,* 284 Ga. 330, 332 (667 SE2d 71) (2008) (citation omitted). Indeed, under OCGA § 17-16-6, "the severe sanction of exclusion of evidence applies only where there has been a showing of bad faith by the State and prejudice to the defense." *Cockrell,* 281 Ga. at 539. We also have held that an interview of the witness in question is an appropriate remedy for the failure to identify the witness before trial, explaining that "this remedy avoids the harsh sanction provided in OCGA § 17-16-6 of excluding evidence not properly disclosed." *Massey v. State,* 272 Ga. 50, 51-52 (525 SE2d 694) (2000) (citations omitted).

Here, Childs made no showing that the prosecutor acted in bad faith in failing to disclose Davis's identity before trial, nor has Childs shown that he was prejudiced by the omission of Davis from the witness list. In addition, trial counsel acknowledged that his co-counsel, who was originally scheduled to try the case, learned of Davis's existence the day before trial. Trial counsel also admitted that he was introduced to Davis the morning of trial and had an opportunity to talk with him at that time but declined. The trial court offered defense counsel another opportunity to interview Davis before his testimony, but defense counsel again declined. Under these circumstances, the trial court did not abuse its discretion in allowing Davis to testify. See *Holmes,* 284 Ga. at 332.

6. Childs contends the trial court erred in giving a jury instruction on the State's duty to disprove an insanity defense beyond a

reasonable doubt. Childs correctly notes that there was no evidence of insanity presented at trial, and he contends that the charge about a negative mental state could have prejudiced him in the jury's eyes. We addressed this same issue in *Jones v. State*, 250 Ga. 166 (296 SE2d 598) (1982), and held that the trial court's isolated reference to an insanity defense when insanity was not at issue at trial, viewed in the context of the charge as a whole, did not render the charge prejudicial or misleading. See id. at 169-170. We reach the same result here.

7. Finally, Childs claims that he received ineffective assistance of counsel because his trial counsel failed to adequately prepare for the case and to present an effective defense. To prevail on this claim, Childs had the burden to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984).

The only argument that Childs makes to support his claim is that trial counsel's preparation was hampered by the State's failure to disclose the existence of Davis as a witness and by Childs's being unable to testify because of OCGA § 24-9-84.1. However, the State's failure to disclose Davis as a witness was not the fault of Childs's counsel and cannot constitute deficient performance on his part. To the extent that Childs is arguing that trial counsel performed deficiently by failing to exercise the option of interviewing Davis before he testified or by failing to move for a continuance, Childs has failed to show prejudice, as he did not offer any evidence at the motion for new trial hearing as to how interviewing Davis before trial would have benefitted his case. Likewise, the fact that OCGA § 24-9-84.1 might have allowed the State to impeach Childs if he had testified does not constitute deficient performance by his counsel. And Childs makes no allegation that trial counsel performed deficiently by not putting him on the stand when he could have been impeached as permitted under the statute. For these reasons, we find no merit to Childs's claim that he received ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 5, 2010.

*David E. Morgan III*, for appellant.
*Denise D. Fachini, District Attorney, Matthew P. Brown, Assis-*

*tant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.