S12A0658. WILKINS v. THE STATE.
(731 SE2d 346)

THOMPSON, Presiding Justice.

Appellant Mathew Wilkins was found guilty of malice murder, felony murder, aggravated assault, and aggravated battery in connection with the death of Marlisa Wells.[1] He appeals from the denial of his motion for new trial, and for the reasons that follow, we affirm.

---

[1] The crimes occurred on January 19, 2008. Appellant was indicted by a Cobb County grand jury on April 4, 2008, on charges of malice murder, felony murder, aggravated assault, and aggravated battery. A jury trial was held March 2-10, 2010, and appellant was found guilty of all charges. He was sentenced on March 18, 2010, to life in prison on the malice murder charge and a consecutive 20-year term on the aggravated battery charge. The felony murder and aggravated assault charges were vacated by operation of law or merged. See *Malcolm v. State*, 263 Ga. 369, 371-374 (434 SE2d 479) (1993). Appellant filed a motion for a new trial on March 23, 2010, and an amended motion for new trial was filed on January 6, 2011. The trial court denied the motion for new trial on April 15, 2011. Appellant filed a notice of appeal on April 29, 2011. The appeal was docketed to the April 2012 term of this Court and submitted for decision on the briefs.

1. The jury was authorized to find that appellant and the 16-year-old victim were involved in an intimate relationship which resulted in the victim becoming pregnant. On the morning of the crimes, appellant went to the victim's home to talk about her pregnancy. They argued, and appellant stabbed the victim at least 60 times. Expert testimony established the victim died as a result of blunt force trauma and stab wounds to her head and neck region. The victim was discovered by her grandparents lying on the bathroom floor covered in blood with a fork protruding from her back. There was no sign of forced entry into the home.

Despite appellant's claim that he did not see or speak with the victim on the day of the crimes, cellular telephone records indicate they exchanged as many as 36 calls or text messages on the day before and morning of the crimes, the last call being routed through a cellular tower 1.5 miles from the victim's home. Police also discovered a pair of shoes wrapped inside clothing hidden behind an HVAC unit in the attic of appellant's home. Analysis demonstrated blood on the shoe lace matched the victim's DNA profile and also confirmed the presence of appellant's DNA in the victim's vaginal swab, indicating he and the victim had engaged in sexual intercourse shortly before her death.

Viewed in the light most favorable to the verdict, we conclude the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). "It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Mickens v. State*, 277 Ga. 627, 629 (593 SE2d 350) (2004).

2. Appellant contends the State engaged in unconstitutional race-based discrimination by using three of its nine peremptory strikes against African-Americans. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). To establish a *Batson* violation, a defendant must show that the State engaged in purposeful racial discrimination in its use of peremptory strikes. "Once a party raising a *Batson* challenge satisfies his or her burden of showing a prima facie case of racial discrimination, the reasons provided to overcome any presumption of racial discrimination must be concrete, tangible, race-neutral, and neutrally applied. [Cits.]" (Punctuation omitted.) *Scott v. State*, 280 Ga. 466, 467 (629 SE2d 211) (2006).

The record in this case supports the trial court's finding that the reasons offered for the State's strikes were race-neutral and not pretextual. See *Hernandez v. New York*, 500 U. S. 352, 360 (111 SC

1859, 114 LE2d 395) (1991) (plurality opinion) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral"); *Scott*, supra, 280 Ga. at 467 (trial court's finding that there was no violation of *Batson* is entitled to great deference). In one instance, a prospective African-American juror testified he had an uncle with whom he was close who was convicted of murder. "Prior convictions or arrest histories of a family member are a sufficiently race neutral reason to exercise a peremptory strike. [Cit.]" *Henry v. State*, 265 Ga. 732, 734 (462 SE2d 737) (1995). The second African-American juror was similarly struck because he had a prior arrest and had initiated a criminal complaint against an individual and then failed to cooperate with the prosecution as the case proceeded. The prosecutor's concerns regarding this juror's prior arrest and his experience with the State in a prior prosecution are racially-neutral. As to the State's final peremptory strike, the State explained that the juror failed to respond to several general voir dire questions regarding prior arrests or convictions and whether he had ever been falsely accused of a crime. Then, during individual voir dire, this juror disclosed he previously had been arrested and falsely accused of a crime. The prosecutor's explanation for striking this juror is supported by the record and was racially-neutral. Inasmuch as the State offered racially-neutral reasons for its strikēs and appellant failed to establish that the reasons given were pretexts for racial discrimination, we conclude the trial court was authorized to find there was no *Batson* violation.

3. During voir dire, the State brought into the courtroom a cart carrying nondescript boxes, paper evidence bags, and a foam board. The defense moved for a mistrial based on the fact that potential jurors were able to observe the cart as it passed in the hallway and were tainted by seeing this evidence before the start of trial. After offering to allow defense counsel to question potential jurors, the trial court denied appellant's motion for mistrial because the items panel members saw were unremarkable and there was no evidence that the panel members could not be fair and impartial.

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Ottis v. State*, 271 Ga. 200, 201 (517 SE2d 525) (1999). We find no abuse of the trial court's discretion in determining that the items panel members saw were unremarkable and their view of these items would not affect appellant's right to a fair trial. See *Smith v. State*, 288 Ga. 348, 350 (703 SE2d 629)

(2010) (mistrial should be granted only where " 'essential to the preservation of the defendant's right to a fair trial' " (citations omitted)).

4. A second motion for mistrial was made after an investigator was asked what he would have done in the investigation if the DNA evidence from the vaginal swab had come back as belonging to someone other than appellant. At that point in the trial, the State had not yet introduced any evidence showing that semen was found in the victim's body or indicating that the sample matched appellant's DNA. Appellant moved for a mistrial, arguing a mistrial was required because the prosecutor had commented on facts not in evidence. The trial court denied the motion for mistrial but informed counsel that if the State did not present the evidence referred to, the prosecutor's question would be improper and the issue would be revisited by the court.

> When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. [Cit.] Whether the statements are so prejudicial as to warrant a mistrial is within the trial court's discretion. [Cits.]

*Agee v. State*, 279 Ga. 774, 777 (621 SE2d 434) (2005). In this case we find no prejudice and no abuse of the trial court's discretion because the evidence the prosecutor's question alluded to was subsequently introduced into evidence.

5. Appellant contends the trial court erred by allowing a witness whose name was not included on the State's witness list to testify at trial. Because appellant opted into reciprocal discovery pursuant to OCGA § 17-16-2 (a), the State was required to provide the defense with the State's list of witnesses no later than ten days before trial. See OCGA § 17-16-8 (a). OCGA § 17-16-6 sets forth the remedies for a defendant upon the State's failure to comply with OCGA § 17-16-8, providing that

> the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. . . .

Thus, by it plain terms, "the severe sanction of exclusion of evidence applies only where there has been a showing of bad faith by the State *and* prejudice to the defense." *Cockrell v. State*, 281 Ga. 536, 539 (640 SE2d 262) (2007).

Even assuming the State violated the requirements of OCGA § 17-16-8, we find no abuse of the trial court's broad discretion in fashioning its remedy. See *Norris v. State*, 289 Ga. 154, 156 (709 SE2d 792) (2011) (opportunity to interview witness is usually sufficient remedy for discovery violation); *Holmes v. State*, 284 Ga. 330, 332 (667 SE2d 71) (2008) (legislature cloaked trial court with discretion to use its own judgment in fashioning remedy under OCGA § 17-16-6). There is no evidence in this case of prosecutorial misconduct or bad faith by the State for failing to include the witness on the witness list and it is undisputed that the trial court suspended trial overnight to afford appellant the opportunity to interview the witness. In addition, the witness' name, address and telephone number, as well as notes related to the content of his interview by police, were included in discovery reports provided to the defense.

> When the identity and involvement of a witness are otherwise disclosed to defendant in discovery provided to him by the State, the purpose of the witness list rule is served and the court may allow the State to call the witness even though he or she was not listed on the State's formal witness list.

*McLarty v. State*, 238 Ga. App. 27, 29 (2) (516 SE2d 818) (1999).

6. The defense stipulated at trial to the admission of appellant's original cellular telephone records. The State also introduced, and the trial court admitted into evidence, a summary of these records indicating there were 36 calls or text messages between appellant and the victim in the day before and morning of the crimes. Appellant contends admission of the State-created summary violated the continuing witness rule.

We find no reversible error in the admission of this summary or in the jury's possession of the summary during deliberations. The continuing witness objection is

> based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. [Cit.]

*Tibbs v. Tibbs,* 257 Ga. 370 (359 SE2d 674) (1987). The rule does not apply to demonstrative evidence, such as the State's summary in this case, which "'serve[s] only to illustrate testimony given by the witness[].'" *James v. State,* 270 Ga. 675, 678 (513 SE2d 207) (1999). See *McKenzie v. State,* 300 Ga. App. 469, 473 (685 SE2d 333) (2009). Moreover, even if there was a violation of the continuing witness rule, there was no harm in light of the fact that the information in the summary was contained in the phone records properly admitted pursuant to stipulation. Under these circumstances, it is highly probable that allowing the summary to go out with the jury during its deliberations did not contribute to the verdict. See id.

7. The trial court did not abuse its discretion by admitting two photographs of a stairway at the crime scene, one showing measurements, the other not. Photographs that are relevant and material are admissible, even if they are somewhat duplicative. *Dean v. State,* 273 Ga. 806 (2) (546 SE2d 499) (2001). See *Holmes,* supra, 284 Ga. at 331 (4) (no abuse of discretion by admitting photographs depicting crime scene).

8. On direct examination, a police investigator was asked whether it is sometimes difficult to obtain fingerprints of an identifiable quality from a crime scene. Appellant initially objected to this inquiry on the ground that no foundation had been laid to qualify the witness as an expert on fingerprint evidence, but he acquiesced after the trial judge stated he would allow the question but then allow appellant to cross-examine the witness regarding his qualifications if appellant wished to do so. Counsel responded by stating, "Thank you, Judge." Even assuming the State was required to qualify the witness as a fingerprint expert, this enumeration of error is waived on appeal because appellant acquiesced in the procedure announced by the court. See *Compton v. State,* 281 Ga. 45 (2) (635 SE2d 766) (2006) (defendant may not submit to court's ruling or acquiesce in holding and then complain of same on appeal).

9. Appellant contends the State improperly impeached his mother, whom he called as an alibi witness. OCGA § 24-9-82 provides that a "witness may be impeached by disproving the facts testified to by him." The record demonstrates that during cross-examination, Ms. Wilkins twice testified that no one from the State called her. In rebuttal the State presented evidence, including a recorded phone call, showing that an investigator called Ms. Wilkins but she refused to speak with him. This evidence was properly admitted pursuant to OCGA § 24-9-82 because it disproved Ms. Wilkins' testimony and was relevant to the issue of her credibility. Contrary to appellant's argument, the fact that the evidence may have shown Ms. Wilkins

was not cooperative with investigators did not unconstitutionally shift to appellant the burden of proving his innocence.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 10, 2012.

*Justin J. Wyatt*, for appellant.

*Patrick H. Head, District Attorney, Anna G. Cross, Jesse D. Evans, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.