**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2221. ANDREWS v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Robert Clayton Andrews was found guilty of three counts of incest, three counts of statutory rape, two counts of child molestation, enticing a child for indecent purposes, and false statements. He now appeals from the denial of his motion for new trial, contending that the trial court erred in denying his motion to suppress DNA evidence, in overruling his objection to impermissible character evidence, and in overruling his objection and motion for mistrial when the State commented on his right to remain silent in its closing argument. For the reasons that follow, we affirm.

1. Andrews contends that the trial court erred in denying his motion to suppress DNA evidence. He maintains that the DNA evidence was provided for a paternity test only, and thus could not be used in his criminal trial. We do not agree.

In reviewing a trial court's ruling on a suppression motion, evidence is construed most favorably to uphold the findings and judgment. When consent to search is in issue, the State has the burden of proving the consent was freely and voluntarily given. The validity of a consent to search is determined from all the circumstances. A police officer cannot arbitrarily expand the scope of the consent to search. A consensual search is invalid when it exceeds the scope of the consent.

(Citations omitted.) *State v. Long*, 232 Ga. App. 445 (502 SE2d 298) (1998).

The evidence demonstrates that in January 2011, police opened an investigation when it was discovered that the 12-year-old victim was pregnant. The victim told police that she been in a sexual relationship with a man named "Josh." After the baby was born in June of that year, police obtained a DNA sample from the baby and the victim, but the case was administratively closed because police had no further leads. In October of 2011, the victim told her grandmother, with whom she lived, that Andrews, who was her uncle and the grandmother's son, was the baby's father. The grandmother apparently put the victim out of her home, but kept the baby. Afterward, when the victim and the grandmother were involved in a public altercation, the police were called and they subsequently renewed the investigation into the victim's pregnancy.

At the motion to suppress hearing, a detective testified that on October 25, 2011, after having been identified as a suspect, Andrews and the grandmother voluntarily came to the police station and asked for a paternity test, purportedly for the purpose of exonerating him. The detective was busy at the time and asked them to come back later in the afternoon. When they returned, before having his saliva tested, Andrews signed a consent form which the officer explained to Andrews meant that, "you're freely giving this saliva sample to this paternity test because, obviously, you've been accused of something." The "Voluntary Consent to Search" form stated in relevant part that,

> I have been advised. . . and understand that I am not required to and cannot be compelled to consent to this search without a warrant. I understand that anything found by the searching officers can be used against me in court proceedings. I hereby certify that I have not been threatened or coerced, nor have I been promised anything in order to obtain my consent, which is freely and voluntarily given. The officer further explained to Andrews that "if you go through [with the test] and it comes back that you are the father . . . we can use it in court. . . . So if you agree to give me a sample . . . we're just doing paternity with this okay?" Andrews was arrested approximately three weeks later when the results of the DNA test revealed that he was the father of the victim's baby.

Although Andrews contends that his consent was limited to the use of his DNA for paternity purposes and that he did not voluntarily and freely consent to the use of his DNA in the prosecution of the criminal case, we agree with the trial court that Andrews consented to the DNA test "voluntarily, knowing that the police were investigating unlawful sexual intercourse with a child. The proof of his paternity of the victim's child also proved that he had sex with her which was a crime." It is true "that blood samples taken from a suspect in a criminal matter may not be used for purposes for which a suspect was not advised and to which he did not, therefore, consent." *Holmes v. State*, 284 Ga. 330, 331 (2) (667 SE2d 71) (2008). But here, Andrews voluntarily came to the police station after he was notified that he was a suspect in the criminal case. The detective told Andrews that the DNA was going to be used to establish paternity, that he had been accused of the crime, and that the results could be used against him in court proceedings. The DNA was not used for any purpose other than that stated by the officer. Compare *v. Long*, 232 Ga. App. at 446 (consent to blood test upon receiving implied consent warning is not consent to use of results for prosecution of possession of cocaine); *Beasley v. State*, 204 Ga. App. 214, 214-217 (1) (419 SE2d 92) (1992) (defendant's consent involuntary

because he was told his urine sample would be used to determine bond eligibility, not for criminal prosecution).

Under these circumstances, the trial court did not err in finding that the State met its burden of proving that Andrews' consent was freely and voluntarily given. *Holmes,* 284 Ga. at 331 (2).

2. The trial court also did not err in overruling Andrews objection to the victim's testimony that she had told her grandmother about Andrews because "I see all these others mothers with their . . . child's dad, and I'm like, my son's not getting that same thing, and of course — like he got another child." Andrews objected and requested a mistrial, arguing that the testimony that he had another child was prejudicial "because it implies to the jury about his past sexual behavior." The State argued that the testimony was not prejudicial because Andrews, as an adult, was "free to have as many children as he wants" and the victim's jealousy over Andrew's other child was relevant as the reason the victim had finally told her grandmother about the relationship with Andrews. The trial court overruled the objection, denied the motion for a mistrial and Andrews' request for curative instruction.

Under OCGA § 24-4-404 (a), "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity

5

therewith on a particular occasion."[1] "[I]f the evidence of other acts is relevant for some other purpose than to show a probability that the defendant committed the crime because he is a man of criminal character, the evidence is admissible despite incidentally placing the defendant's character in issue." (Citation and punctuation omitted.) *Washington v. State*, 294 Ga. 560, 563 (2) (755 SE2d 160) (2014).

Andrews maintains that the victim's testimony would impress upon the jury that he had committed the offense of fornication with an different female, that the jury might also assume that the mother of the other child was underage, and thus, it might assume that Andrews had committed the offense of statutory rape with another female. While arguably the fact that Andrews had another child might incidentally place his character at issue, the testimony was relevant to explain why the victim, who had initially fabricated a story about the father of her child, later said that she had a sexual relationship with Andrews. Moreover, given the overwhelming evidence in this case demonstrating that Andrews was the father of his 12-year-old niece's child, it is unlikely that the testimony negatively impacted the outcome of Andrews' case,

---

[1]This case was tried after January 1, 2013, so our new Evidence Code applies. See Ga. L. 2011, pp. 99, 214, § 101. OCGA § 24-2-2 was superseded by OCGA § 24-4-404.

6

and the failure to demonstrate harm from an alleged error precludes reversal. *White v. State*, 225 Ga. App. 74, 77 (9) (483 SE2d 329) (1997).

Thus, the trial court did not err in overruling Andrews' objection and in denying his motion for a mistrial on this basis.

3. Andrews contends that the trial court erred in overruling his objection to the prosecutor's comment in closing that, in relation to the crimes, "the only other person who knows is the Defendant and he hasn't admitted to anything. You heard his denial that any of this ever happened. What you've also heard is a whole lot of evidence that is absolutely unrefuted." Andrews objected to the comment as burden-shifting and an improper comment on his right to remain silent. He also moved for a mistrial. "The trial court overruled his objection and denied the motion for a mistrial. The trial judge in passing upon a motion for mistrial on account of alleged improper argument is vested with a broad and sound discretion, and his ruling will not be controlled by this court unless manifestly abused." (Citations and punctuation omitted.) *James v. State*, 265 Ga. App. 689, 690 (1) (595 SE2d 364) (2004). Despite Andrews' contention otherwise, "we view the remarks to be a permissible comment on [Andrews'] failure to adduce evidence rebutting the State's evidence. This is neither burden shifting nor

an impermissible comment on defendant's failure to testify." (Citations and punctuation omitted.) *Miller v. State*, 240 Ga. App. 18, 20 (2) (522 SE2d 519) (1999).

*Judgment affirmed. Boggs and Branch, JJ., concur*.